# United States Court of Appeals
## For the First Circuit

No. 07-1844

OVIDIO A. DEANDRADE,

Plaintiff, Appellant,

v.

TRANS UNION LLC,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Stahl, Senior Circuit Judge.

Christopher M. Lefebvre with whom Law Offices of Claude
Lefebvre & Sons was on brief for appellant.
Timothy P. Creech with whom Mark E. Kogan, Bruce S. Luckman,
and Kogan, Trichon & Wertheimer, P.C., were on brief for
appellee.

April 15, 2008

**STAHL, <u>Senior Circuit Judge</u>**.  Plaintiff-appellant Ovidio A. DeAndrade brought an action against Trans Union, LLC ("Trans Union"); Equifax Information Services, LLC ("Equifax"); and KeyBank USA ("KeyBank") in Rhode Island federal district court, alleging various violations of the Fair Credit Reporting Act,  15 U.S.C. §§ 1681-1681x ("FCRA").[1]  The suit followed a dispute over a loan repayment between DeAndrade and KeyBank, and the credit bureaus' alleged failure to reinvestigate properly and delete the disputed debt from DeAndrade's credit report.  Trans Union moved for summary judgment, and the district court accepted the magistrate judge's recommended decision granting the motion.  DeAndrade now appeals. Finding that the material facts are undisputed and establish no FCRA violation, we affirm the district court's grant of summary judgment in favor of Trans Union.

## I.  Background

DeAndrade purchased new windows for his home from a company called NESCOR in July of 2001.  At DeAndrade's request, NESCOR agreed to arrange mortgage financing for the windows, although it did not specify the identity of the lender.  DeAndrade and his wife signed documents in connection with this financing,

---

[1]The  complaint  also  alleged  a  defamation  claim  against KeyBank.  Trans Union is the only defendant remaining in this action; the claims against Equifax and KeyBank were dismissed after DeAndrade reached settlements with those parties.

which created a lien on their home.[2] NESCOR initially organized the financing through Conseco Finance ("Conseco"). When DeAndrade received notice of the first payment owed to Conseco, however, the bill was greater than the amount that he had indicated to NESCOR that he would be willing to pay. DeAndrade complained, and NESCOR promised to remedy the situation, sending DeAndrade a check for $11,722.30 with instructions to use the funds to pay the balance due Conseco. Shortly thereafter, DeAndrade received an invoice from KeyBank for approximately $121, an amount consistent with the original terms of his agreement with NESCOR.[3]

DeAndrade made twenty-two monthly payments to KeyBank, from September 2001 until June 2003. The DeAndrades had never received copies of the loan documents, and at some point, apparently after speaking with a consumer attorney, DeAndrade's wife contacted KeyBank to obtain copies of the documents. The DeAndrades were "shocked" to discover that the documents granted a mortgage on their residence to KeyBank and that their signatures on the documents appeared to have been forged. As a result, the

---

[2]The record is somewhat unclear as to what documents the DeAndrades attest to signing and when they signed them. There is a contract with NESCOR for the installation of the windows, dated July 21, 2001, which both DeAndrade and his wife admit to signing. DeAndrade also recalled signing five or six documents proffered by a NESCOR representative, some of which may have related to a loan. His wife recalled signing blank sheets of paper at the request of that same representative.

[3]After two months, KeyBank replaced the invoices with a payment coupon book for monthly payments in the same amount.

DeAndrades filed suit against KeyBank in Rhode Island Superior Court on August 20, 2003, requesting declaratory relief as to the validity of the KeyBank mortgage.[4]  In that complaint, DeAndrade alleged that he and his wife never signed any documents granting a mortgage on their home to KeyBank and never authorized NESCOR to do so on their behalf.

DeAndrade maintains that when he commenced the state lawsuit, he stopped sending the monthly payments to KeyBank and instead deposited them into an escrow account pending the resolution of that action.  KeyBank notified the three major credit bureaus--Trans Union, Experian, and Equifax--of the alleged delinquent payments, and the bureaus updated DeAndrade's credit report accordingly.  Through an attorney, DeAndrade then sent a letter dated July 16, 2004 to those three credit bureaus, advising them that the mortgage underlying the negative item reported by KeyBank had been fraudulently obtained and urging the bureaus to investigate the transaction.[5]  Attached to the letter were forty-

---

[4]The state court complaint also lists "Barbara Andrade," DeAndrade's wife, as a plaintiff, but she is not named as a plaintiff in the federal case.

[5]The letter stated, in part:
> My clients has [sic] alleged that the mortgage and the promissory note that was given in favor of Key Bank was procured by fraud. . . . I assume that you will do an investigation on this matter.  Please do not verify the accuracy of the Key Bank trade-line until you receive sufficient information to satisfy you that the signatures on both the promissory

nine pages of documentation, including the Rhode Island Superior Court complaint, provided in support of DeAndrade's allegations of fraud. Experian deleted the KeyBank item after receiving DeAndrade's letter, but Trans Union and Equifax did not.

On August 2, 2004, Trans Union sent a letter to DeAndrade indicating receipt of his request to investigate the disputed item. Trans Union then contacted KeyBank to verify the accuracy of the item. Trans Union did not forward the documents it had received from DeAndrade to KeyBank, but rather sent KeyBank an automated dispute verification form ("ACDV"). The ACDV stated that the customer "[d]isputes present/prev Acct Status" and believed the account to be "not his/hers." KeyBank's response verified DeAndrade's name, address, social security number, month and year of birth, telephone number, and delinquent payment history. Trans Union then sent DeAndrade a notice, dated August 11, 2004, informing him that KeyBank had confirmed the item's accuracy and advising him of his further rights under the FCRA. Trans Union continued to publish the KeyBank debt on DeAndrade's credit report, but DeAndrade did not contact Trans Union again before initiating this lawsuit.

On December 21, 2004, DeAndrade filed suit in the United States District Court for the District of Rhode Island, claiming

---

note and mortgage are valid.

that Trans Union had violated a provision of the FCRA, 15 U.S.C. § 1681i, by "failing to conduct a lawful reinvestigation" of the disputed debt and failing to delete the allegedly inaccurate item from DeAndrade's credit report. DeAndrade maintained that Trans Union's refusal to delete the disputed item harmed him by negatively impacting his ability to obtain needed credit, such as a home refinancing.

Trans Union moved for summary judgment, arguing that the suit was an impermissible collateral attack on the validity of the KeyBank loan through the FCRA, that DeAndrade had in any case ratified the loan and therefore the information published on his credit report was accurate, and that DeAndrade had failed to adduce evidence of negligent or willful noncompliance with the FCRA.[6] Considering the ratification issue to be dispositive, the magistrate judge addressed that issue only and found that DeAndrade had ratified the KeyBank debt, rendering Trans Union's report of that debt accurate. Noting that inaccuracy is a necessary element of an FCRA claim, the magistrate judge recommended granting Trans Union's summary judgment motion. The district court accepted the

---

[6]Trans Union also put forward an argument regarding DeAndrade's "defamation" claim; however, as the magistrate judge noted, DeAndrade did not allege a defamation claim against Trans Union.

-6-

magistrate judge's recommended decision and granted summary judgment to Trans Union.[7]

## II. Discussion

We review the district court's grant of summary judgment de novo, with all reasonable inferences resolved in favor of the nonmoving party. Fenton v. John Hancock Mut. Life Ins. Co., 400 F.3d 83, 87 (1st Cir. 2005). Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable

---

[7]In its order adopting the magistrate judge's report and recommendation, the district court noted that during the hearing on plaintiff's objection to the magistrate judge's report, DeAndrade for the first time raised an argument predicated on the Federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f. DeAndrade argued that another factor militating against ratification was KeyBank's alleged failure to comply with TILA disclosure requirements. The district court ruled that argument was waived because it was not raised before the magistrate judge. See Fireman's Ins. Co. of Newark, N.J. v. Todesca Equip. Co., 310 F.3d 32, 38 (1st Cir. 2002). While a TILA violation may have provided grounds for rescission of the mortgage agreement, DeAndrade waived that argument below and makes no serious effort to press it on appeal; accordingly, we will not consider it. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

law." Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)(citations omitted).

If a consumer disputes the accuracy or completeness of any item contained in his or her consumer report, 15 U.S.C. § 1681i(a) requires consumer reporting agencies to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."[8] The magistrate judge reasoned that "[a] necessary element of Plaintiff's [§ 1681i] claim is that the information Trans Union reported was inaccurate." Deandrade v. Trans Union, LLC, No. 1:04-cv-00534, slip op. at 9 (D.R.I. Nov. 29, 2006)(unpublished). This court has yet to opine on the question whether a plaintiff must show that the disputed information

---

[8]15 U.S.C. § 1681i(a) states, in relevant part:

(a) Reinvestigations of disputed information

(1) Reinvestigation required.--

(A) In general.--Subject to subsection (f) of this section, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

contained in a consumer report is inaccurate in order to prevail on a § 1681i FCRA claim.[9]  The magistrate judge's recommended decision and Trans Union's brief on appeal cite a string of cases in support of the proposition that a showing of inaccuracy is essential.  The relevant language in those cases, however, largely addresses claims brought under § 1681e(b), not § 1681i; indeed, in most of the cases cited, either no § 1681i claim was asserted or the question of accuracy is not addressed directly.  See, e.g., Dalton v. Capital Associated Indus., 257 F.3d 409, 415 (4th Cir. 2001)(holding that "a consumer reporting agency violates § 1681e(b) if (1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy"); Spence v. TRW, 92 F.3d 380, 382 (6th Cir. 1996)(holding that plaintiff could not prevail on his § 1681e(b) claim "without proving the information in question was inaccurate"); Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994)(holding that "[i]n order to state a claim under 15 U.S.C. § 1681e(b), a consumer must sufficiently allege that a

---

[9]At the hearing on plaintiff's objection to the magistrate judge's report, counsel for DeAndrade appeared to concede the issue, stating "I think [the magistrate judge's] approach was correct in that once he found that the debt was ratified, it was a valid debt, that we don't have to get to the reinvestigation issue."  However, DeAndrade asserts in his reply brief on appeal that he has not conceded this issue, although his appellate briefs offer no developed argumentation on the subject.  Nevertheless, because this is an important threshold question of law and the magistrate judge's treatment of it warrants clarification, we will discuss it here.

credit reporting agency prepared a report containing 'inaccurate' information")(emphasis added)(citations omitted); <u>Wadley</u> v. <u>Ford Motor Credit Co.</u>, 397 F. Supp. 2d 781, 783 (E.D. Va. 2005)(plaintiff alleged claim under § 1681s-2(a), "which prohibits an entity from furnishing information relating to a consumer to a consumer reporting agency if "(i) the [entity] has been notified by the consumer . . . that specific information is inaccurate; and (ii) the <u>information is, in fact, inaccurate.</u>")(emphasis in original); <u>Dauster</u> v. <u>Household Credit Servs., Inc.</u>, 396 F. Supp. 2d 663, 664 (E.D. Va. 2005)(where plaintiff had conceded information reported by credit agency was accurate, plaintiff failed to state claim under FCRA § 1681e(b)); <u>see also</u> <u>Wantz</u> v. <u>Experian Info. Solutions</u>, 386 F.3d 829, 833-34 (7th Cir. 2004)(affirming summary judgment for defendant on § 1681i(a) claim not on grounds that disputed information was accurate, but rather on grounds that disputed information was never reported to potential creditor and therefore plaintiff failed to show actual damages). <u>But</u> <u>see</u> <u>Cahlin</u> v. <u>Gen. Motors Acceptance Corp.</u>, 936 F.2d 1151, 1160 (11th Cir. 1991)("[A] section [1681i] claim is properly raised when a particular credit report contains a <u>factual</u> deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry.")(emphasis in original).

It is thus clear that to prevail on a § 1681e(b) claim, a plaintiff must demonstrate that his or her credit report sports an <u>actual</u> inaccuracy.  Looking at the statutory language, however, it is not immediately obvious that § 1681e(b) and § 1681i should be interpreted identically in this regard.[10]  See <u>Kaiser Aluminum & Chem. Corp.</u> v. <u>Bonjorno</u>, 494 U.S. 827, 835 (1990)(The "starting point for interpretation of a statute is the language of the statute itself.")(citations omitted).  15 U.S.C. § 1681e(b) states: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  This language is not ambiguous; it creates an obligation on the part of the consumer reporting agency to ensure the preparation of accurate reports independent from § 1681i's reinvestigation requirement.  Section 1681i requires consumer reporting agencies to "reinvestigate free of charge" if "the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the

---

[10]In fact, courts have been careful to draw distinctions between the burdens imposed by § 1681e(b) and § 1681i in other contexts.  See, e.g., <u>Cushman</u> v. <u>Trans Union Corp.</u>, 115 F.3d 220, 225 (3d Cir. 1997)(holding that because § 1681i's reinvestigation requirement may mandate a more thorough investigation than that contemplated by § 1681e(b), "[j]udgment as a matter of law, even if appropriate on a § 1681e(b) claim, thus may not be warranted on a § 1681i claim"); <u>Henson</u>, 29 F.3d 280 at 286-87 (affirming motion to dismiss plaintiff's § 1681e(b) claim but remanding for consideration of plaintiff's § 1681i claim).

-11-

consumer and the consumer notifies the agency directly of such dispute." 15 U.S.C. § 1681i(a)(1)(A). It is thus not necessarily apparent, on the face of the statute, that a § 1681i plaintiff must also adduce sufficient evidence to show that the disputed information was in fact inaccurate, as opposed to merely showing that the plaintiff disputed its accuracy and had informed the agency accordingly.

Nevertheless, the weight of authority in other circuits indicates that without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail. See Dennis v. BEH-1, LLC, ___ F.3d ___, 2008 WL 795378, at *2 (9th Cir. Mar. 27, 2008)(§ 1681i creates no duty to reinvestigate where "the credit report accurately reflect[s] the status of the information contained in the public records") (citing Williams v. Colonial Bank, 826 F. Supp. 415, 418 (M.D. Ala. 1993)); Kuehling v. Trans Union, LLC, 137 F. App'x 904, 908 (7th Cir. July 6, 2005) (unpublished) ("Without evidence of some inaccuracy in the Trans Union report or reinvestigation, Kuehling cannot establish that Trans Union violated the FCRA--either § 1681e(b) or § 1681i(a)(1)(A)"); Cahlin, 936 F.2d at 1160. But see Wadley v. Experian Info. Solutions, Inc., 241 F. App'x 132, 136 (4th Cir. July 17, 2007)(unpublished)(vacating and remanding grant of summary judgment to defendant credit agency where district court found plaintiff failed to establish that credit report contained

-12-

inaccurate information but did not address plaintiff's § 1681i claim, and plaintiff argued that agency "had a duty to reinvestigate the credit report . . . regardless of whether the [] report was accurate."); Dickens v. Trans Union Corp., 18 F. App'x 315, 319 (6th Cir. Aug. 23, 2001)(unpublished)("Although a showing of inaccuracy is an essential element of a § 1681e(b) claim . . . it is unclear whether a showing of inaccuracy is required for § 1681i liability . . . .") (citations omitted).

We find the reasoning of the majority of other appellate courts persuasive. The FCRA is intended to protect consumers against the compilation and dissemination of inaccurate credit information. See Equifax v. Fed. Trade Comm'n, 678 F.2d 1047, 1048 (11th Cir. 1982)(noting stated purpose of FCRA is "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report")(citations omitted); S. Rep. No. 108-166, 108th Cong., 1st Sess. 5-6 (2003)("The driving force behind the [1996 amendments to the FCRA] was the significant amount of inaccurate information that was being reported by consumer reporting agencies and the difficulties that consumers faced getting such errors corrected."). At the very least, it is difficult to see how a plaintiff could prevail on a claim for damages under § 1681i without a showing that the disputed information disclosed by the credit agency was, in fact, inaccurate. See Wantz, 386 F.3d at 829 (holding that plaintiff

could not demonstrate a violation of § 1681i absent evidence that defendant credit agency "disclosed incorrect information . . . to a third party"); cf. Salei v. Am. Exp. Travel Related Servs. Co., 134 F.3d 372 (Table), 1997 WL 809956, at *3 (6th Cir. Dec. 19, 1997) (unpublished) ("Even if a showing of inaccuracy is not a predicate to liability, damages would be almost impossible to prove without it . . . ."). Thus, if there is no genuine issue as to whether the KeyBank debt reported by Trans Union was inaccurate, DeAndrade's claim fails as a matter of law.

The magistrate judge reasoned that the KeyBank item reported by Trans Union was accurate because DeAndrade ratified the KeyBank loan, and the district court accepted the magistrate judge's recommended decision. However, "[w]e are not committed to the district court's reasoning, but, rather, may affirm its order on any independent ground made apparent by the record." United States v. Cabrera-Polo, 376 F.3d 29, 31 (1st Cir. 2004); see also InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003).

To determine whether a consumer has identified a factual inaccuracy on his or her credit report that would activate § 1681i's reinvestigation requirement, "[t]he decisive inquiry" is whether the defendant credit bureau could have uncovered the inaccuracy "if it had reasonably reinvestigated the matter." Cushman, 115 F.3d at 226 (citations omitted). The KeyBank debt reported by Trans Union does not fall under this rubric. Here,

-14-

there is no dispute that DeAndrade received windows financed by a mortgage on his home; what DeAndrade is attacking is the mortgage's validity.  Whether the mortgage is valid turns on questions that can only be resolved by a court of law, such as whether DeAndrade ratified the loan.  This is not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a credit agency such as Trans Union is neither qualified nor obligated to resolve under the FCRA.  See Cahlin, 936 F.2d at 1160 ("No reasonable reinvestigation on the part [of the credit agency] could have uncovered an inaccuracy in Cahlin's report because there was never any factual deficiency in the report.").

We therefore find it unnecessary to reach the question of ratification.  The information reported by Trans Union was accurate not because DeAndrade had ratified the loan (although that may also be true), but because it did not state any factual deficiency that could have been resolved by a reasonable reinvestigation conducted by the credit bureau.  KeyBank did in fact have documentation granting it a mortgage on the residence of one DeAndrade who was in fact the same DeAndrade that had been making the loan payments and is the plaintiff in this case.  Determining whether DeAndrade was entitled to stop making those payments is a question for a court to resolve in a suit against KeyBank--and DeAndrade did file a state suit against KeyBank--not a job imposed upon consumer reporting

-15-

agencies by the FCRA. If a court had ruled the mortgage invalid and Trans Union had continued to report it as a valid debt, then DeAndrade would have grounds for a potential FCRA claim. In essence, DeAndrade has crossed the line between alleging a factual deficiency that Trans Union was obliged to investigate pursuant to the FCRA and launching an impermissible collateral attack against a lender by bringing an FCRA claim against a consumer reporting agency. See Wadley, 396 F. Supp. 2d at 679-680 ("The FCRA does not provide a cause of action to collaterally attack an accurate credit report."); Williams, 826 F. Supp. at 418 ("A credit reporting agency has no duty, as a part of its reinvestigation, to go behind public records to check for accuracy or completeness when a consumer is essentially collaterally attacking the underlying credit information."). The Williams court noted that the FCRA provides an alternative remedy for consumers in cases such as this: pursuant to § 1681i(c), they may submit a statement detailing their version of the dispute to be included in their credit report. Id. It is no fault of Trans Union that DeAndrade apparently chose not to avail himself of that option.

### III. Conclusion

For the foregoing reasons, we affirm the summary judgment order of the district court.

Affirmed.

-16-