**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4137
_____

WILLIAM A. SCHWEITZER, JR.,
                                        Appellant

v.

EQUIFAX INFORMATION SOLUTIONS LLC

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 08-cv-00478)
District Judge:  Honorable Joy Flowers Conti
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 13, 2011

Before:  AMBRO, HARDIMAN and  VAN ANTWERPEN, Circuit Judges

(Opinion filed: August 10, 2011)

_____

OPINION
_____

PER CURIAM

        William A. Schweitzer, Jr. ("Mr. Schweitzer") appeals pro se from two orders of

the District Court granting summary judgment in favor of the defendant, Equifax

Information Solutions, LLC ("Equifax").  We will affirm in part, vacate in part, and

remand for further proceedings consistent with this opinion.

I.

The parties are familiar with the facts, so we will only briefly revisit them here. In March 2008, Mr. Schweitzer and his wife, Linda O. Schweitzer ("Mrs. Schweitzer"), filed a lawsuit in state court against Equifax, a credit reporting agency, claiming that they were unable to obtain consumer loans because their credit reports contained false or misrepresented information, including information pertaining to bankruptcy filings.[1] In particular, the Schweitzers alleged that Equifax violated the federal Fair Credit Reporting Act ("FCRA") by failing to follow reasonable procedures to maintain accuracy of the credit reports, 15 U.S.C. § 1681e(b), failing to reinvestigate disputed information, 15 U.S.C. § 1681i(a), failing to delete information found to be inaccurate, 15 U.S.C. § 1681i(a)(5)(C), failing to provide notice of deleted information, 15 U.S.C. § 1681i(d), and failing to maintain strict procedures to insure that information reported for employment purposes is complete and up to date, 15 U.S.C. § 1681k. The Schweitzers also brought a state common law claim for negligent misrepresentation, relying on Section 552 of the Restatement (Second) of Torts. The case was removed to the United States District Court for the Western District of Pennsylvania.

---

[1] This was not the Schweitzers first state lawsuit against Equifax. Beginning in 2006, the Schweitzers filed a series of lawsuits in the Magisterial Court of Allegheny County. On January 2, 2007, Mrs. Schweitzer signed a Settlement Agreement and released Equifax from all claims arising prior to the date of the agreement. In separate state lawsuits, Mr. Schweitzer obtained judgments against Equifax.

The District Court permitted Mrs. Schweitzer to assign her claims to her husband and terminated her as a named plaintiff.[2]  Equifax filed motions for summary judgment, separately addressing the claims of Mr. Schweitzer and those assigned to him by Mrs. Schweitzer.  In support of those motions, Equifax filed statements of material facts, which Mr. Schweitzer did not dispute.  The District Court granted both motions, holding that Mr. Schweitzer did not provide evidence to establish all the elements of the asserted claims.[3]  Schweitzer v. Equifax Info. Solutions, No. 08-00478, 2010 WL 3809987 (W.D. Pa. Sept. 21, 2010).  Mr. Schweitzer appealed.

## II.

We have jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over an order granting a motion for summary judgment.  Gallo v. City of Philadelphia, 161 F.3d 217, 221 (3d Cir. 1998).  A grant of summary judgment will be affirmed if our review reveals that "there is no genuine issue as to any material fact and that the movant is

---

[2] Thereafter, Mrs. Schweitzer's counsel withdrew from representing her, but later entered his appearance on behalf of Mr. Schweitzer.  For the remainder of the proceedings in the District Court, including summary judgment briefing, Mr. Schweitzer was represented by counsel.

[3] The District Court properly held that Mrs. Schweitzer's claims were barred to the extent that they arose prior to January 2, 2007, the date that she settled her claims against Equifax in state court.  Schweitzer v. Equifax Info. Solutions, No. 08-00478, 2010 WL 3809891, at *6-9 (W.D. Pa. Sept. 21, 2010).  As to any claims arising after that date, Mrs. Schweitzer failed to dispute Equifax's assertion that, after signing the Settlement Agreement, her credit reports did not contain any information concerning the accounts disputed in the complaint.  Thus, we

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (amended Dec. 1, 2010).

"We review the facts in the light most favorable to the party against whom summary judgment was entered." Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co., 10 F.3d 144, 146 (3d Cir. 1993). We can affirm the judgment of the District Court on any basis supported by the record. Brown v. Pa. Dep't of Health Emergency Med. Servs., 318 F.3d 473, 475 n.1 (3d Cir. 2003).

III.

Equifax issued credit reports to Mr. Schweitzer on November 7, 2006, November 27, 2006, March 21, 2007, and October 17, 2007. The controversy here centers on Equifax's reporting of the following six accounts: (1) a tax lien; (2) an Americredit account; (3) a Duquesne Light Company account; (4) an EMC Mortgage account; (5) a First Premiere account; and (6) an S&T Bank account. Mr. Schweitzer contacted Equifax on several occasions to dispute the accuracy of four of these accounts, which we will discuss in turn.[4]

### 1) Tax Lien GD956532

In October 2005, Mr. Schweitzer sent a dispute letter to Equifax, claiming that the tax lien had been released. In support of this assertion, Mr. Schweitzer attached a copy of

---

conclude that the District Court properly entered summary judgment in favor of Equifax on the claims assigned from Mrs. Schweitzer to Mr. Schweitzer.

[4] Equifax claimed that it did not receive disputes concerning the Duquesne Light Company account or the S&T Bank account. Mr. Schweitzer did not dispute this assertion. Furthermore, other than briefly referencing these accounts in his

the lien release form. By letter dated November 18, 2005, Equifax notified Mr. Schweitzer that the "item has been updated to report satisfied/released" but that "[p]aid/released liens remain on file the earlier of 7 yrs from the release date." Information about the lien did not appear in the credit report issued on November 7, 2006, but it was reflected in the three subsequent reports. Notably, in each instance where the lien was reported, the credit reports confirm that its "release[]" had been "[v]erified."

    2)    Americredit Account *41066

At his deposition, Mr. Schweitzer testified that he was linked to two Americredit loan accounts; one was related to his Lincoln Towncar and the other was related to his daughter's Pontiac. In the fall of 2005, Mr. Schweitzer sent several dispute letters to Equifax regarding an Americredit account that included the number *41066. In the first letter, dated October 4, 2005, Mr. Schweitzer alleged that the *41066 account pertained to a vehicle owned solely by his daughter and had not been discharged in his Chapter 11 bankruptcy proceeding. With respect to those proceedings, Mr. Schweitzer provided a case number, the dates that the case had been filed and closed, and an assertion that no other bankruptcies should be associated with his name. In response to Mr. Schweitzer's letter, Equifax asked Americredit to confirm the validity of the accounts through an Automated Consumer Dispute Verification ("ACDV") form. By letter dated November

---

deposition, Mr. Schweitzer did not identify any alleged errors in Equifax's reporting.

5

18, 2005, Equifax informed Mr. Schweitzer that "[a]dditional information has been provided from the original source regarding this item" and that the investigation "verified that this item belongs to you."

In another letter, dated November 20, 2005, Mr. Schweitzer maintained that the Americredit account "reporting is in error" and "remains a matter of dispute with serious potential consequences." Equifax reinvestigated, Americredit again verified that the account was reporting accurately, and Equifax reported its results to Mr. Schweitzer. Mr. Schweitzer's next letter to Equifax, dated November 28, cited both Americredit accounts, emphasized that "**NO** Chapter 7 Bankruptcy exists," and urged "Equifax to cease its reporting with respect to these items." On December 14, 2005, Equifax asked Americredit to investigate Mr. Schweitzer's claim, noting that "customer states that he never applied for Chapter 7 bankruptcy." On December 23, 2005, Equifax informed Mr. Schweitzer that the Americredit "account is currently not reporting as included in bankruptcy." According to the complaint, Mr. Schweitzer sued Americredit and ultimately prevailed in August 2006, forcing it to "notify Equifax . . . to cease its reporting . . . on two separate accounts."

No Americredit accounts appeared in the November 7, 2006 credit report. But the November 27, 2006 credit report contained public record information about the Chapter 11 bankruptcy and listed two Americredit accounts. Under the topic "Current Status," the report indicated that both accounts were "Included in Bankruptcy." The account including the number *41066 was associated with the Chapter 11 bankruptcy. The entry

6

for the other account, number *0287, contained a reference to "Bankruptcy Chapter 7" and included a notation that "consumer disputes this account information."[5] The credit report dated March 21, 2007, did not contain any reference to the *0287 account, but was otherwise identical to the previous report with respect to the Chapter 11 bankruptcy and the *41066 Americredit account. No Americredit accounts appeared in the credit report dated October 17, 2007.

### 3) EMC Mortgage Account *0231

Mr. Schweitzer wrote to Equifax in October 2005, claiming that the EMC Mortgage account had been paid in full. Equifax researched its files and determined that the EMC Mortgage was reporting a zero balance for the account. Equifax provided those results to Mr. Schweitzer. Although the EMC Mortgage account did not appear in the credit reports issued on November 7, 2006, and October 17, 2007, it did appear in the reports issued on November 27, 2006, and March 21, 2007. Both of those reports indicated that while the account had been "Over 120 Days Past Due," "ADDITIONAL INFORMATION" showed "Account Paid/Zero Balance," with a "date of Last Activity" in August 2008. This reporting was consistent with Equifax's notification to Mr. Schweitzer that "[a]dverse accounts that have been paid in full will automatically be deleted seven years from the date of last activity."

### 4) First Premiere account *0301

---

[5] Mr. Schweitzer's complaint did not challenge Equifax's reporting concerning this account.

7

In his October 2005 letter to Equifax, Mr. Schweitzer claimed that he "ha[d] nothing to do with" the First Premiere account. He "ask[ed] [Equifax] to check their records carefully" but asserted that he would "not take the time or devote the energy to prove [that the accounts] are wrong." In his deposition, Mr. Schweitzer confirmed that the First Premiere account belonged to him but stated that it was a "deposit account . . . [where] you put money in then you borrow your own money back," that it contained "$4500 of my money on deposit," and that it was "charged off" in May 2000. In response to Mr. Schweitzer's letter, Equifax conducted a reinvestigation by sending First Premier an ACDV form, which included the information Equifax had concerning the account and a description of Mr. Schweitzer's dispute. After First Premier indicated that the account was reporting accurately, Equifax notified Mr. Schweitzer that "this item has been reported correctly." The First Premiere account was not included in the November 7, 2006 credit report, but did appear in the subsequent three reports. Those reports contained identical information about the account, including that it was a "revolving" account, that it had a zero balance, and that it had been "paid and closed."

IV.

Mr. Schweitzer alleged that Equifax violated several sections of the FCRA.[6] The

---

[6] Because the District Court concluded that Mr. Schweitzer's claims lacked merit, it did not address Equifax's alternative theory that his claims were barred by res judicata based on his prior state court lawsuits. Schweitzer, 2010 WL 3809987, at *7. Equifax argues in its brief on appeal that Mr. Schweitzer "essentially concedes that the combination of Mrs. Schweitzer's January 2007 settlement agreement and [his] March 2007 [state court] judgment extinguishes any and all

8

FCRA was enacted in order to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). The Act creates a private right of action against credit reporting agencies for the negligent or willful violation of any duty imposed under the statute. Philbin v. Trans Union Corp., 101 F.3d 957, 962-63 (3d Cir. 1996) (citing 15 U.S.C. §§ 1681n & 1681o).

1.      § 1681e(b)

Mr. Schweitzer alleged that Equifax violated § 1681e(b). Negligent noncompliance with that provision consists of the following four elements: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." Philbin, 101 F.3d at 963. The District Court held that Mr. Schweitzer "cannot make out a prima facie case . . . because he failed to provide

claims against Equifax that predated those events . . . ." Appellee's Br., 17. We disagree with this assessment of Mr. Schweitzer's pro se Informal Brief. Equifax also asserts "Mr. Schweitzer's claims are severely limited by the judgment he obtained – and satisfied – against Equifax in March 2007." Appellee's Br., 17. We agree, however, with the District Court's decision not to dispose of Mr. Schweitzer's claims on res judicata grounds because the record suggests that the prior state lawsuits involved entries of default judgments, rather than adjudications on the merits. Schweitzer, 2010 WL 3809987, at *1 & n.9, *4 n.11.

evidence that his credit reports actually contained inaccurate information." We agree with this conclusion, except as it pertains to the Americredit account.

"In order to make out a prima facie violation of section [1681e(b)], the [FCRA] implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information." Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991). "A report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[]' effect." Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 415 (4th Cir. 2001) (quoting Sepulvado v. CSC Credit Servs., 158 F.3d 890, 895 (5th Cir. 1998)). Thus, "a consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression."[7] Saunders v. Branch Banking & Trust Co., 526 F.3d 142, 148 (4th Cir. 2008).

Viewing the facts in the light most favorable to Mr. Schweitzer, we agree that most of the accounts were not reported inaccurately within the meaning of the FCRA. For example, Mr. Schweitzer claimed that the tax lien had been released and, in each instance where Equifax included the lien in a credit report, the report indicated that its "release[]" had been "[v]erified." Likewise, Mr. Schweitzer's indication that the EMC

---

[7] We note that some courts have "adopted a 'technical accuracy' standard which holds that a credit reporting agency satisfies its duty if it produces a report containing factually correct information about a consumer that is nonetheless

Mortgage account had been paid in full was also properly reflected in the credit reports, which stated "Account Paid/Zero Balance." Furthermore, information in the credit reports concerning the First Premiere account matched Mr. Schweitzer's description of that account. Finally, we conclude that Mr. Schweitzer has failed to offer evidence concerning the Duquesne Light Company and the S&T Bank accounts that would create a genuine fact issue for trial on the § 1681e(b) claim. Therefore, with respect to these accounts, we will affirm the entry of summary judgment in favor of Equifax on Mr. Schweitzer's § 1681e(b) claim.

With respect to the Americredit account, however, we conclude that the District Court erred in holding that there was no evidence that the credit reports were inaccurate. Mr. Schweitzer repeatedly wrote to Equifax to dispute the accuracy of the Americredit account which contained the number *41066. He provided Equifax with pertinent details concerning his Chapter 11 bankruptcy proceedings, alleged that no other bankruptcies should be associated with his name, and noted that the Americredit account had not been discharged in his bankruptcy proceeding. After initially reporting to Mr. Schweitzer that the Americredit account was reporting accurately, Equifax informed Mr. Schweitzer on December 23, 2005, that the "account is currently not reporting as included in bankruptcy." Mr. Schweitzer further claimed that he sued Americredit and ultimately prevailed in August 2006, forcing it to "notify Equifax . . . to cease its reporting . . . on

---

misleading or incomplete in another respect." Smith v. HireRight Solutions, Inc., 711 F. Supp. 2d 426, 433 n.5 (E.D. Pa. 2010).

two separate accounts." Nevertheless, in two subsequently-issued credit reports, the Americredit account's "Current Status" was identified as "Included in Bankruptcy." We conclude that these inconsistencies create a genuine issue of material fact concerning whether inaccurate information was included in Mr. Schweitzer's credit report.

As noted above, consumer reporting agencies are liable only when the inaccuracies are the result of their failure to follow reasonable procedures. § 1681e(b). Here, Equifax provided a detailed account of its procedures and the District Court properly noted that "the evidence of reasonableness of the procedures followed by Equifax was uncontroverted." Schweitzer, 2010 WL 3809987, at *11. This conclusion, however, is insufficient to support the grant of summary judgment regarding the Americredit account. Cf. Sarver v. Experian Info. Solutions, 390 F.3d 969, 971 (7th Cir. 2004) (stating that the "reasonableness of a reporting agency's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question."). "Reasonable procedures are those that a reasonably prudent person would [undertake] under the circumstances." Philbin, 101 F.3d at 963 (internal quotations and citations omitted). In Philbin, we examined, without endorsement, three approaches taken by other courts of appeals regarding "the nature of the plaintiff's burden of proof on the 'reasonable procedures' issue on a motion for summary judgment."[8] Id. at 964. As in Philbin, we conclude that under any approach, Mr.

---

[8] The three standards, from most to least stringent are: "that a plaintiff must produce some evidence beyond a mere inaccuracy in order to demonstrate the

Schweitzer has produced evidence sufficient to survive summary judgment. <u>See</u> <u>Cortez</u> <u>v. Trans Union</u>, 617 F.3d 688, 710 (3d Cir. 2010) (declined to decide on "any one approach in <u>Philbin</u> because the plaintiff had produced evidence sufficient to meet any of the three standards."). Notably, Mr. Schweitzer alleged that the Americredit account was not "related in any way" to the bankruptcy, Equifax confirmed that the "account is currently not reporting as included in bankruptcy," yet subsequent credit reports identified the account as "Included in Bankruptcy." Accordingly, as to the Americredit account only, we will vacate the District Court's entry of summary judgment in favor of Equifax on the § 1681e(b) claim.

2.      § 1681i(a)

Under § 1681i(a), credit reporting agencies must promptly conduct a "reasonable reinvestigation" of information in a credit report when a consumer disputes the validity of that information. The District Court concluded that Mr. Schweitzer "did not provide any evidence demonstrating that Equifax failed to reinvestigate at his request under § 1681i(a)," noting that Equifax "detailed each request it received and the way in which the company handled the requests according to its dispute policy." <u>Schweitzer</u>, 2010 WL 3809987, at *11. The question, however, is not simply whether the credit reporting agency reinvestigated, but whether that reinvestigation was "reasonable." In this context,

---

failure to follow reasonable procedures; that the jury may infer the failure to follow reasonable procedures from the mere fact of an inaccuracy; or that upon demonstrating an inaccuracy, the burden shifts to the defendant to prove that reasonable procedures were followed." <u>Philbin</u>, 101 F.3d at 965.

we have stated that "[a]lthough the parameters of a reasonable investigation will often depend on the circumstances of a particular dispute, it is clear that a reasonable reinvestigation must mean more than simply including public documents in a consumer report or making only a cursory investigation into the reliability of information that is reported to potential creditors." Cortez, 617 F.3d at 713. Therefore, "in order to fulfill its obligation under § 1681i(a), 'a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information.'" Cushman v. Trans Union, 115 F.3d 220, 225 (3d Cir. 1997) (quoting Henson v. CSC Credit Servs., 29 F.3d 280, 287 (7th Cir. 1994)). The "grave responsibility" imposed under § 1681i(a) "must consist of something more than merely parroting information received from other sources." Id.

Here, Mr. Schweitzer wrote to Equifax three times asserting that the Americredit account was inaccurately reported as being included in his bankruptcy.[9] Mr. Schweitzer provided the bankruptcy case number, the dates that the case had been filed and closed, and details concerning the circumstances of the bankruptcy filing. In response to Mr. Schweitzer's inquiries, Equifax sent ACDV forms to Americredit advising it of the dispute but did not investigate further. Under these circumstances, we conclude that

---

[9] With respect to the other accounts, however, we conclude that summary judgment was properly granted in favor of Equifax because, as discussed above, there is no genuine issue of material fact as to the accuracy of those accounts. DeAndrade v. Trans Union, 523 F.3d 61, 67 (1st Cir. 2008) (stating that "the weight of authority in other circuits indicates that without a showing that the

there is a genuine issue of material fact concerning whether Equifax's reinvestigations concerning the Americredit account were reasonable under § 1681i(a).  Cf. Dennis v. BEH-1, LLC, 520 F.3d 1066, 1071 (9th Cir. 2008) (suggesting that failure to delete a disputed item from a credit report when there are contrary items in a court file can demonstrate that an investigation was unreasonable).  Consequently, with respect to the Americredit account only, we will vacate the grant of summary judgment and remand to the District Court on Mr. Schweitzer's § 1681i(a) claim.

3.      § 1681i(a)(5)(C), § 1681i(d), and §1681k

The District Court properly granted summary judgment in favor of Equifax on the claims brought under § 1681i(a)(5)(C), § 1681i(d), and §1681k.[10]  Section 1681i(a)(5)(C) requires a consumer reporting agency to "maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to" a reinvestigation.  § 1681i(a)(5)(C).  We agree with the District Court that there is no evidence in the record that Equifax reinserted into Mr. Schweitzer's credit report inaccurate information that had been deleted following a reinvestigation.  Under 1681i(d), a consumer may request the credit reporting agency to "furnish notification . . . to any person specifically designated by the consumer who . . . received a consumer report . . . which contained the deleted or disputed information."

reported information was in fact inaccurate, a claim brought under § 1681i must fail.")

[10] We reject Equifax's argument that Mr. Schweitzer abandoned these claims on appeal.

Again, there is no indication that Equifax deleted any inaccurate information, and Mr. Schweitzer did not dispute Equifax's assertion that he never requested that notification be sent under § 1681i(d). Section 1681k pertains to credit reports furnished for employment purposes. There is no evidence in the record that Equifax failed to notify Mr. Schweitzer that it was reporting public record information which was "likely to have an adverse effect upon [his] ability to obtain employment," or that it failed to "maintain strict procedures designed to insure [sic] that" the report is complete and up to date.

4.      Section 552 of the Restatement (Second) of Torts

Citing Section 552 of the Restatement (Second) of Torts, Mr. Schweitzer alleged that Equifax negligently supplied information for the guidance of others. In Pennsylvania, "[n]egligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." Bortz v. Noon, 729 A.2d 555, 561 (Pa. 1999). The District Court concluded that Mr. Schweitzer could not maintain a cause of action for negligent misrepresentation against Equifax because he was not the one who acted in justifiable reliance on the alleged misrepresentation. We agree. While "there is no requirement of privity in order to recover under Section 552," the tort does "include[] a foreseeability requirement, thereby reasonably restricting the class of potential plaintiffs." Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270, 285-86 (Pa. 2005). Indeed, the Pennsylvania

16

Supreme Court has approved an approach whereby "[t]he defendant is liable only to those, whether in contractual privity or not, for whose benefit and guidance the information is supplied." Id. at 286 (quoting John Martin Co., Inc. v. Morse/Diesel, Inc., 819 S.W.2d 428, 431-32 (Tenn. 1991)).

V.

For the reasons given, we will affirm in part, vacate in part, and remand for further proceeding.