**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 23, 2018[*]
Decided January 8, 2019

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 18-1584

|  |  |
|---|---|
| IAN HUMPHREY, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of |
|  | Wisconsin. |
| *v.* |  |
|  | No. 16-cv-370-jdp |
| TRANS UNION LLC, *et al.*, |  |
| *Defendants-Appellees*. | James D. Peterson, |
|  | *Judge*. |

**O R D E R**

Navient Solutions, Inc. (previously a division of Sallie Mae) serviced Ian Humphrey's federal student loans from 2010 until 2014, when Humphrey's debts were discharged because he is disabled. Humphrey claims that, because of unreasonable investigation practices, Navient still furnishes inaccurate information about his nonpayment before the discharge and that the three major consumer reporting

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. Rule 34(a)(2)(C).

agencies, Trans Union LLC, Experian Information Solutions, Inc., and Equifax Information Services LLC (the CRAs), failed to properly reinvestigate and delete the allegedly inaccurate information. After Humphrey sued for various violations of the Fair Credit Reporting Act, the district court entered judgment on the pleadings for the CRAs and then summary judgment for Navient. We affirm the judgment in favor of the CRAs. But because Navient was required to cease collections on four of Humphrey's student loans, we vacate in part the district court's entry of summary judgment in favor of Navient and remand for further proceedings consistent with this order.

Payments on Humphrey's loans became due in 2011, but Humphrey never made any. He says that he was never required to because of pending applications to discharge his student-loan debt due his total disability. Humphrey bases his opinion on two regulations: 34 C.F.R. §§ 682.402(c)(7)(i) and 685.213(b)(1). The versions of these regulations in effect in 2011 and 2012 provided that a lender must suspend collections while an application for a disability discharge is pending.

In October 2011, Humphrey allegedly sent Navient a disability-discharge application. Navient denies receiving the application, and Humphrey lacks documentary evidence that he sent it. But it is now undisputed that a physician did not certify the application if in fact Humphrey sent it. Later, in March 2012, Humphrey requested a discharge application form from Navient, which it sent him the same day.

From September to December 2012, Navient furnished information to the CRAs that Humphrey's student loans were past due. Navient continues to relay that his accounts were past due during that period. On November 26, 2012, Humphrey returned a completed application form for a disability discharge to Navient with a physician's certification, but it was not the same form Navient had sent him in March: it was an old—"expired"—version of the form. Navient notified him on December 7, 2012, that it could not process the application because the Department of Education would not accept an expired form. Navient then sent him a current application form.[1] In the same letter Navient stated: "Please note that payments on your loan(s) will not be deferred or discharged until we receive, review, and approve your request." But, after this

---

[1] The documents in the record do not appear consistent with Navient's assertions that (1) the form Humphrey returned to Navient on November 26, 2012, differed from the one Navient sent him in March 2012 and (2) that the application form Navient sent him on December 7, 2012 was the current version. But Humphrey admitted these facts in response to Navient's Proposed Findings of Fact in the district court and does not challenge them now.

correspondence Navient stopped reporting Humphrey's delinquent student-loan payments for the months of January through June 2013.

In July 2013, Navient resumed its reporting to the CRAs that Humphrey was not paying his loans and continued its reporting until December 2013. That same month Humphrey sent Navient a completed, but slightly altered, "Loan Discharge Application: False Certification (Disqualifying Status)." Navient again stopped reporting that Humphrey's loans were past due but continued to report the two previous nonpayment periods.

In July 2014, Humphrey's student loans were discharged by Nelnet, the Department of Education's disability discharge servicer. After the discharge, Humphrey contacted the CRAs five times disputing his credit report, which still reflected the past nonpayment periods. He also sent detailed letters about the nature of his dispute to both Navient and the CRAs. Each time he disputed his credit report, the CRAs sent Navient automated verification requests notifying it of the disputes. Each request included various "dispute codes" (Humphrey challenged his loan debt on many grounds besides disability), but none indicated that Humphrey was specifically contesting the nonpayment periods. The first two requests included a statement that Humphrey's loans were "[d]ischarged via TPD [Total and Permanent Disability] through NELNET." Responding to each request, Navient reviewed its "internal records," including Humphrey's "personal identification information, promissory notes, and loan documentation." It determined that Humphrey had incurred the loans and not paid them back, and so it told the CRAs that the information was accurate.

Humphrey has been denied credit several times because, according to him, Navient inaccurately furnishes that his accounts were past due, and the CRAs erroneously report that information. The credit denials prevented him from getting treatment for a wisdom tooth and finding proper housing. He also says he suffered emotional distress and underwent therapy because of the defendants' actions.

Frustrated with the responses he received, Humphrey sued the three CRAs and Navient for willful and negligent violations of the Fair Credit Reporting Act. He alleged that the CRAs violated the Act by failing to follow reasonable procedures to assure maximum possible accuracy of reported information, *see* 15 U.S.C. § 1681e(b); failing to properly reinvestigate the disputed debt and delete it, *see id.* § 1681i; and not providing Humphrey his credit file upon request, *see id.* § 1681g. After answering the operative complaint, the CRAs jointly moved for judgment on the pleadings, and the district court entered judgment for the CRAs. It ruled that Humphrey's claims against the CRAs

amounted to an impermissible collateral attack on the validity of his loans, and so the Act was not the proper vehicle for relief.

Navient remained in the case. Humphrey alleged that Navient did not conduct reasonable investigations of the information he disputed and failed to correct the inaccurate information with the CRAs. *See* 15 U.S.C. § 1681s-2(b). After discovery, Navient moved for summary judgment, arguing that Humphrey's incomplete and expired applications did not require it to suspend collections, and further, that the information it furnished was factually accurate because Humphrey made no loan payments during the time periods Navient reported him delinquent. The district court agreed and entered summary judgment for Navient, concluding that, as a threshold issue, Humphrey could not show that Navient reported inaccurate information. Therefore, Humphrey lacked standing to sue Navient because Navient did not cause the injuries stemming from his credit report—even if it had inadequately investigated Humphrey's disputes.

Humphrey was represented by counsel throughout the lawsuit, and his lawyer moved for reconsideration of the summary-judgment ruling. But Humphrey terminated him before the court ruled. Humphrey also moved *pro se* for amended findings. The court denied both motions. Essential to both the entry of summary judgment and denial of Humphrey's post-judgment motions was the judge's legal conclusion that Humphrey was not entitled to suspension of collection activities during the periods Navient reported his accounts as past due, and, therefore, the information it furnished was accurate. Humphrey now appeals the judgments in favor of the CRAs and Navient.

## A. Judgment on the Pleadings for the Credit Reporting Agencies

We review the grant of a motion for judgment on the pleadings *de novo*, employing the same standard as that for dismissing a complaint for failure to state a claim: "the complaint must state a claim that is plausible on its face." *See Armada (Sing.) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1092 (7th Cir. 2018) (citations omitted). We accept facts pleaded as true, but we are not obligated to give weight to unsupported conclusions of law. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

Humphrey contends he stated a claim against the CRAs because he alleged that (1) he was not required to make payments on his loans during the times Navient reported them as past due because of his disability-discharge application; (2) he disputed the information about his student loans with the CRAs; and (3) the CRAs continued to inaccurately report his student loan accounts as past due after he disputed the information. The CRAs respond that, on these allegations, Humphrey pleaded only a *legal* inaccuracy, which the Act does not require them to resolve through the

reinvestigation requirement (§ 1681i) and provides an insufficient basis for a claim under § 1681e.

The Act imposes duties on consumer reporting agencies to prepare consumer credit reports using "reasonable procedures to assure maximum possible accuracy of the information concerning the individual to whom the report relates." 15 U.S.C. § 1681e(b). When a consumer disputes information in his report, the Act also requires a CRA to conduct a "reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." *Id.* § 1681i(a)(1)(A). To state a claim under the Act's accurate reporting (§ 1681e) and reinvestigation provisions (§ 1681i), the consumer must sufficiently allege that his credit report contains *inaccurate* information. *See Wantz v. Experian Info. Servs.*, 386 F.3d 829, 834 (7th Cir. 2004); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

Because Humphrey's complaint did not allege a factual inaccuracy on his credit report, the district court correctly granted the CRAs' joint motion for judgment on the pleadings. Humphrey's allegation that he was not required to make payments on his student loans required a legal determination about whether his disability-discharge applications required Navient to cease collections. As a major student-loan servicer, Navient was in a better position than the CRAs to make this determination. *See Brill v. Transunion LLC*, 838 F.3d 919, 921 (7th Cir. 2016) (consumer failed to state a claim against Transunion regarding reporting of his Toyota car lease because Toyota, as the lessor, was in a better position to determine the validity of its own lease). On receiving notice of Humphrey's dispute, the CRAs repeatedly contacted Navient to verify that Humphrey had in fact incurred the loans, informed Navient of the nature of the dispute, and supplied Humphrey with the results of its investigation. That was a reasonable reinvestigation, considering that the CRAs are not a tribunal sitting to resolve legal disputes. We adopt the reasoning of *DeAndrade v. Trans Union LLC*, 523 F.3d 61 (1st Cir. 2008), and rule that a consumer may not use the Fair Credit Reporting Act to collaterally attack the validity of a debt by challenging a CRA's reinvestigation procedure. The information the CRAs reported about Humphrey's student loans was accurate because the information "did not state any factual deficiency that could have been resolved by a reasonable reinvestigation" conducted by any of the credit bureaus. *See DeAndrade*, 523 F.3d at 68. Whether Humphrey was entitled to a suspension of collections was a legal question beyond the scope of a reasonable reinvestigation.

We also dispose of Humphrey's claim that the CRAs violated § 1681g by not providing Humphrey his credit file. The defendants contend that Humphrey waived

this argument because he did not present it when opposing the motion for judgment on the pleadings. Humphrey argues that he was not obligated to respond to an argument that the CRAs presented in a footnote. But even if we held to that, we may affirm a dismissal on any ground contained in the record, *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009). And, as the CRAs argue, Humphrey failed to allege in his complaint that he requested his credit file from them. Humphrey cites two paragraphs in the complaint that he contends can be construed as alleging that he requested his credit file. But neither comes close: asserting that the CRAs failed to conduct a reasonable investigation and that Humphrey "demand[ed] details of the investigation[s]" does not suffice as an allegation that he requested his credit file. *See* 15 U.S.C. § 1681g(a); *see also Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 940–41 (7th Cir. 2007) ("[e]very consumer reporting agency shall, *upon request* ... clearly and accurately disclose to the consumer [a]ll information in the consumer's file at the time of the request" (emphasis added)).

### B. Summary Judgment for Navient

Humphrey also appeals summary judgment in favor of Navient. Humphrey's challenge depends primarily on the correct interpretations of 34 C.F.R. §§ 682.402 and 685.213 (effective July 1, 2010 to June 30, 2013). This is because Humphrey attributes the harms he suffered—primarily, emotional distress and denial of credit—to allegedly inaccurate information about his student loans appearing on his credit report. So, to show that he suffered from an inaccuracy disseminated by Navient that could have been corrected by a reasonable investigation (and thus demonstrate a genuine fact question precluding summary judgment), Humphrey argues that Navient was required to suspend collections during the times it reported his accounts as past due because his applications for a disability discharge had been pending since October 2011. He contends that, under the then-effective versions of 34 C.F.R. §§ 682.402(c)(7)(i) and 685.213(b)(1), his disability discharge applications in October 2011 (without a physician's certification) and November 2012 (on an expired form) mandated that Navient refrain from reporting any nonpayment periods while the applications were processed. Second, Humphrey maintains that even if the 2011 application was ineffective because it was unaccompanied by a physician's certification, his expired November 2012 application triggered the regulations' protections because the physician's certification was enough.

Humphrey is partially correct. The two regulations each require a lender to suspend collections on a borrower's student loans while an application for a disability discharge is pending, but they differ about how that duty is triggered. Section 685.213(b)(1) applies to loans under the William D. Ford Direct Loan Program ("Direct

Loans"), *see* 20 U.S.C. §§ 1071 to 1087-4, and requires a borrower to submit an application on an approved form to trigger the suspension of payment obligations:

> To qualify for a discharge of a Direct Loan based on a total and permanent disability, *a borrower must submit a discharge application to the Secretary on a form approved by the Secretary. The application must contain a certification by a physician*, who is a doctor of medicine or osteopathy legally authorized to practice in a State, that the borrower is totally and permanently disabled as described in paragraph (1) of the definition of that term in 34 CFR 682.200(b). The borrower must submit the application to the Secretary within 90 days of the date the physician certifies the application. *Upon receipt of the borrower's application, the Secretary notifies the borrower that no payments are due on the loan while the Secretary determines the borrower's eligibility for discharge.*

34 C.F.R. § 685.213(b)(1) (emphasis added).

But section 682.402, which applies to loans obtained through the Federal Family Education Loan Program ("FFEL" loans), *see* 20 U.S.C. §§ 1087a–j, requires something less. It requires only a physician's certification in order to halt collection efforts:

> After being notified by a borrower or a borrower's representative that the borrower claims to be totally and permanently disabled, the lender must continue collection activities *until it receives either the certification of total and permanent disability from a physician* or a letter from a physician stating that the certification has been requested and that additional time is needed to determine if the borrower is totally and permanently disabled as described in paragraph (1) of the definition of that term in § 682.200(b). Except as provided in paragraph (c)(7)(iii) of this section, *after receiving the physician's certification or letter the lender may not attempt to collect from the borrower* or any endorser.

34 C.F.R. § 682.402(c)(7)(i) (emphasis added).

Therefore, the district court properly entered summary judgment on Humphrey's claims *to the extent* they relate to his Direct Loans and as to his FFEL loans for the periods prior to his application in November 2012. Under either of the regulations at issue, Humphrey's October 2011 application—unaccompanied by a physician's certification—did not trigger Navient's duties to stop collections on either type of loan. Therefore, Navient did not disseminate inaccurate information when it reported his loans as delinquent for September through November 2012.

But as to Navient's reporting of Humphrey's FFEL loans after his application in November 2012, summary judge was not appropriate. Section 682.402(c)(7)(i) required Navient to stop collections on Humphrey's FFEL loans as soon as he submitted his physician's certification of disability. The record shows that Navient continued to report erroneously that Humphrey was becoming further delinquent on his FFEL loans in December 2012 and again from July 2013 through December 2013. Navient was permitted to resume collections on Humphrey's FFEL loans only after considering the physician's certification and determining that Humphrey was "not totally and permanently disabled." *See* 34 C.F.R. § 682.402(c)(7)(iii). But Navient never made any such determination, so it is irrelevant that Navient apparently refrained from reporting a delinquency for a few months after receiving the certification in November 2012. Navient could not have resumed collections on the FFEL loans (and, consequently, should not have adversely reported Humphrey's nonpayments) unless and until it determined that he was not disabled.

We necessarily reject Navient's position that this reading of the regulation renders superfluous subsection (c)(2)'s requirement that a borrower submit his application "on a form approved by the Secretary." Subsection (c)(2) itself speaks of the application and the physician's certification as distinct components. *See* 34 C.F.R. § 682.402(c). Moreover, it would produce an odd result if the receipt of a physician's letter merely requesting more time to make a disability determination required a lender to cease collection efforts, *see id.* § 682.402(c)(7)(i), but the receipt of a physician's completed certification stating that a borrower is disabled did not trigger that same protection.

We are similarly unpersuaded that a different interpretation is mandated by the Notice of Proposed Rulemaking issued by the Department of Education in July 2012, which, regarding § 682.402(c)(2), states that "the lender suspends collections once it receives the application." *See* 77 Fed. Reg. 42086, 42097 (July 12, 2012). For one thing, the Notice of Proposed Rulemaking's cursory description of the regulation does not address expired applications, so we cannot conclude from it that only an application on a "current" form would trigger suspension of collections. And second, even if the Department's "interpretation" were inconsistent with our reading, deference is inappropriate and unwarranted when, as here, the agency's interpretation would be "plainly erroneous or inconsistent" with the regulation being interpreted. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (citations omitted). As a final note, any concern about borrowers gaming the system to stall payment on their loans is alleviated by the requirement that a physician certify an applicant's disability.

As an alternative basis for affirming summary judgment, Navient argues that no reasonable jury could find that its investigations were unreasonable because, Navient contends, the information given to it by the CRAs "did not indicate that Humphrey disputed the information he now claims is inaccurate."

Navient has failed to demonstrate that its investigation of Humphrey's dispute was unquestionably reasonable as a matter of law. When a credit-reporting agency notifies a debt collector of a disputed debt, the debt collector must "conduct an investigation with respect to the disputed information." 15 U.S.C. § 1681s-2(b)(1)(A). Whether the furnisher's investigation is reasonable is a factual inquiry. *Walton v. EOS CCA*, 885 F.3d 1024, 1028 (7th Cir. 2018). Although Navient contends that the CRAs did not provide it with sufficient information about Humphrey's dispute, the record shows that Humphrey sent letters describing the nature of his disagreement to both the CRAs and Navient and called Navient about the dispute several times. The CRAs were required to forward to Navient "all relevant information regarding the dispute that the agency has received from the consumer." 18 U.S.C. §1681i(a)(2). A reasonable jury could infer that Navient had sufficient notice of the nature of the dispute, or, alternatively, that any deficiency of information resulted from Navient's own failure to conduct a reasonable investigation, which should have turned up Humphrey's letters, documentation about his phone calls, and his rejected applications. At the very least, Humphrey has created a genuine dispute about the information that Navient had and used as the basis of its investigation.

Navient's final argument, which the district court did not address because it was unnecessary to its decision, is that Humphrey failed to present sufficient evidence of actual damages or a causal connection between the harms he suffered and Navient's investigation procedure. These issues should be addressed by the district court, or, as appropriate, by a jury, in the first instance.

In conclusion, Humphrey presented sufficient evidence that Navient disseminated inaccurate information about his FFEL student loans that could have been remedied by a proper investigation. We affirm judgment on the pleadings for the CRAs, affirm in part and vacate in part the judgment for Navient, and remand for further proceedings consistent with this order.