In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1519

JOSEPH W. DENAN, *et al.*,

*Plaintiffs-Appellants*,

*v.*

TRANS UNION LLC,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-05027 — **Virginia M. Kendall**, *Judge*.

ARGUED NOVEMBER 4, 2019 — DECIDED MAY 11, 2020

Before WOOD, *Chief Judge*, and BAUER and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Plaintiffs Joseph Denan and Adrienne Padgett sued consumer reporting agency Trans Union LLC, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. We must decide whether §§ 1681e(b) and 1681i(a) of the FCRA compel consumer reporting agencies to determine the legal validity of disputed

debts. The district court dismissed plaintiffs' lawsuit, holding these provisions impose no such duty. Finding no error in the district court's decision, we affirm.

**I**

Plaintiffs each obtained loans from online payday lenders affiliated with Native American tribes. Denan, a New Jersey resident, took out a loan of $1,600 from Plain Green, LCC (affiliated with the Chippewa Cree Tribe). The loan charged an interest rate in excess of 300% and, according to the loan agreement, its terms were "subject to and governed by tribal law[,] … not the law of the borrower's resident state." After Denan stopped making monthly payments, Plain Green reported to Trans Union that he owed $2,689. When Trans Union issued a credit report listing the Plain Green debt, Denan disputed the report's accuracy, telling Trans Union that Plain Green "illegally issued" the loan so "there was no legal obligation for [him] to repay." Trans Union investigated Denan's dispute and verified the accuracy of the information furnished by Plain Green. Trans Union's investigation did not probe Denan's legal defenses to the Plain Green debt.

Padgett, a Florida resident, borrowed $900 from Great Plains, LLC (affiliated with the Otoe-Missouria Tribe) and $1,600 from Plain Green.[1] Each loan demanded an interest rate in excess of 300% and was "subject to and governed by tribal law and not the law of [the] resident state." After

---

[1] Plaintiffs' amended complaint states that Plain Green loaned Padgett $1,600. The district court's dismissal order reflects the same amount. On appeal plaintiffs' brief states Padgett "took out a $1,000 loan from Plain Green," which we presume is a typographical error.

Padgett stopped making monthly payments, the lenders reported to Trans Union delinquent amounts of $2,585 owed to Plain Green, and $1,042 owed to Great Plains. Unlike Denan, Padgett did not contact Trans Union to dispute her credit report.

Plaintiffs brought a putative class action against Trans Union, alleging it violated two FCRA provisions: 15 U.S.C. § 1681e(b), which requires consumer reporting agencies like Trans Union "to assure maximum possible accuracy of the information" contained in credit reports, and 15 U.S.C § 1681i(a), which requires consumer reporting agencies to reinvestigate disputed items. Plaintiffs' claims under each provision presume that Trans Union transmitted "inaccurate" credit reports. Denan and Padgett did not claim Trans Union's reports were factually inaccurate, as they took out the loans reported by Trans Union, and they did not contest the debt amounts or Trans Union's account of their payment history. Instead, plaintiffs claimed Trans Union's reports contained "legally inaccurate" information because they posted "legally invalid debts."

Plaintiffs believe loans issued by Plain Green and Great Plains are void *ab initio* under New Jersey and Florida usury laws, and therefore any debt incurred under those loans is "legally invalid." True or not, plaintiffs did not sue the lenders to void their debts, nor did they seek an adjudication to invalidate them. That is beside the point, per plaintiffs, because "reasonable procedures designed to ensure the maximum possible accuracy of the information would have shown that [Plain Green and Great Plains'] purported loans … were void and uncollectible."

To plaintiffs, Trans Union "knew or recklessly ignored" that loans made by Plain Green and Great Plains were unenforceable, which spawned a § 1681e(b) violation. Their view rests on three allegations. First, plaintiffs contend that Trans Union's lender screening procedures showed that Plain Green and Great Plains lacked licenses to lend outside of Native American tribal reservations. Second, the same screening procedures, they assert, showed that Plain Green and Great Plains had histories of charging loan interest rates in excess of rates permitted in New Jersey and Florida. Third, plaintiffs submit Trans Union ignored government investigations and enforcement actions in several states—though none of them New Jersey or Florida—from which "TransUnion easily could and should have discovered" that Plain Green and Great Plains made illegal loans. The § 1681i(a) claim is more straightforward. After Denan disputed his Plain Green debt, they contend Trans Union "failed to use reasonable reinvestigation practices for ascertaining the accuracy of information" contained in his credit report.

Trans Union moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that §§ 1681e(b) and 1681i(a) impose a duty to transmit factually accurate credit information, not to adjudicate the validity of disputed debts. Plaintiffs' FCRA claims fall short, Trans Union argued, because plaintiffs failed to allege that their credit reports were factually inaccurate. The district court granted Trans Union's motion, concluding that "[u]ntil a formal adjudication invalidates the plaintiffs' loans … they cannot allege factual inaccuracies in their credit reports."

## II

We review de novo a district court's grant of judgment under Rule 12(c). *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043 (7th Cir. 2019). To survive a motion for judgment on the pleadings, "a complaint must state a claim to relief that is plausible on its face." *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018) (citations omitted). When assessing the facial plausibility of a claim, "we view the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (internal citation and quotation marks omitted).

We begin with § 1681e(b), which requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). The statute requires a plaintiff to show that a consumer reporting agency prepared a report containing "inaccurate" information. *See Walton v. BMO Harris Bank N.A.*, 761 F. App'x 589, 591 (7th Cir. 2019) (holding a consumer reporting agency "cannot be liable as a threshold matter [under § 1681e(b)] if it did not report inaccurate information"); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) ("[T]o state a claim under [§ 1681e(b)], a consumer must sufficiently allege that a credit reporting agency prepared a report containing inaccurate information." (internal citations and quotation marks omitted)).

Section 1681e(b) does not explain what it means to be "inaccurate," nor does it draw a line between factual and legal "accuracy." Plaintiffs contend there is no line, arguing that § 1681e(b) requires consumer reporting agencies to verify the factual and legal accuracy of information contained in credit reports. Assuring maximum possible accuracy, they insist, required Trans Union to look beyond the data furnished by Plain Green and Great Plains and determine the legality of plaintiffs' loans. But this argument does not find support in the FCRA or its implementing regulations.

The FCRA imposes duties on consumer reporting agencies and furnishers in a manner consistent with their respective roles in the credit reporting market. Furnishers—such as banks, credit lenders, and collection agencies—provide consumer data to consumer reporting agencies.[2] In turn, those agencies compile the furnished data into a comprehensible format, allowing others to evaluate the creditworthiness of a given consumer. Consumer reporting agencies and furnishers, though interrelated, serve discrete functions: furnishers report data to incentivize the repayment of debts, while consumer reporting agencies compile and report that data for a fee. What results is a credit reporting system, producing a vast flow and store of consumer information. For example, according to the Consumer Financial Protection Bureau, each of the nationwide consumer reporting agencies receive information

---

[2] Though the FCRA does not define the term "furnisher," FCRA regulations define a furnisher as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 C.F.R. § 1022.41(c).

from furnishers on over 1.3 billion consumer credit accounts or trade lines on a monthly basis.[3]

"[G]iven the complexity of the system and the volume of information involved," "[o]ne can easily see how, even with safeguards in place, mistakes can happen." *Sarver*, 390 F.3d at 972 (evaluating § 1681e(b) claim and magnitude of data processed by consumer reporting agency). Thus, the FCRA does not require unfailing accuracy from consumer reporting agencies. Instead, it requires a consumer reporting agency to follow "reasonable procedures to assure maximum possible accuracy" when it prepares a credit report. 15 U.S.C. § 1681e(b); *see also Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("A credit reporting agency is not liable under the FCRA if it followed 'reasonable procedures to assure maximum possible accuracy,' but nonetheless reported inaccurate information in the consumer's credit report."). Furnishers, too, must ensure accurate consumer-credit reporting. *See* 15 U.S.C. § 1681s–2 (setting out the duties of "furnishers of information to consumer reporting agencies" "to provide accurate information" and to conduct an investigation of disputed information). "Accuracy" for furnishers, however, means information that "correctly [r]eflects … liability for the account." 12 C.F.R. § 1022.41(a). Neither the FCRA nor its implementing regulations impose a comparable duty upon consumer reporting agencies, much less a duty to determine the legality of a disputed debt.

---

[3] Consumer Fin. Prot. Bureau, *Key Dimensions and Processes in the U.S. Credit Reporting System: A Review of How the Nation's Largest Credit Bureaus Manage Consumer Data*, 3, 14, 21 (2012), *available at* https://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf. (last visited May 11, 2020).

Here, plaintiffs contend not only that Trans Union had a duty to verify plaintiffs' debt liability, but that Trans Union "knew or recklessly ignored" that their loans "are void and uncollectible as a matter of clearly established law." Their claims, though, attempt to graft responsibilities of data furnishers and tribunals onto a consumer reporting agency. Only furnishers are tasked with accurately reporting liability. *See* 12 C.F.R. § 1022.41(a)*.* And it makes sense that furnishers shoulder this burden: they assumed the risk and bear the loss of unpaid debt, so they are in a better position to determine the legal validity of a debt. *See Brill v. TransUnion LLC*, 838 F.3d 919, 921 (7th Cir. 2016) (affirming dismissal of suit challenging the accuracy of credit report because the creditor car lessor, not a consumer reporting agency, "was in a better position to determine the validity of its own lease"); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009) (explaining "the furnisher of credit information stands in a far better position to make a thorough investigation of a disputed debt than the [consumer reporting agency]").

Nor are consumer reporting agencies tribunals; they collect consumer information supplied by furnishers, compile it into consumer reports, and provide those reports to authorized users. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891–92 (9th Cir. 2010) (explaining same and that a consumer reporting agency is merely "a third party, lacking any direct relationship with the consumer"). The collectability of plaintiffs' loans here requires resolution of three legal issues: whether the choice-of-law provisions in plaintiffs' loan agreements are enforceable; whether New Jersey and Florida lending laws render plaintiffs' loans void; and whether tribal sovereign immunity shields Plain Green and Great Plains

from the application of New Jersey and Florida laws. The power to resolve these legal issues exceeds the competencies of consumer reporting agencies.

Section 1681e(b) requires "reasonable procedures" to ensure accuracy. Plaintiffs' claims impose procedures tribunals, not consumer reporting agencies, can perform. They also impute "knowledge" of information that only tribunals can verify. What plaintiffs call "legally inaccurate" and "legally incorrect" information amounts to non-adjudicated legal defenses to their debts. One might speculate that a loan is illegal, as plaintiffs do, but it would be just speculation. Only a court can fully and finally resolve the legal question of a loan's validity. *See DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (holding the question of whether a consumer is entitled to stop making debt payments "can only be resolved by a court of law" and is "a legal issue that a credit agency such as Trans Union is neither qualified nor obligated to resolve under the FCRA"). "When a complaint's facts 'do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). In other words, plaintiffs "must allege 'more than a sheer possibility'" that Trans Union acted unlawfully by reporting inaccurate information. *Id*. at 472 (quoting *Iqbal*, 556 U.S. at 678). Absent an adjudication invalidating plaintiffs' debts, plaintiffs' § 1681e(b) inaccuracy claim does not move from speculative to plausible. So "plaintiff[s] cannot prove

any facts that would support [their] claim for relief." *Buchanan-Moore*, 570 F.3d at 827.[4]

In this conclusion we join the First, Ninth, and Tenth Circuits in holding that a consumer's defense to a debt "is a question for a court to resolve in a suit against the [creditor,] not a job imposed upon consumer reporting agencies by the FCRA." *Carvalho*, 629 F.3d at 892 (quoting *DeAndrade*, 523 F.3d at 68); *accord Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1244 (10th Cir. 2015) (citing *Carvalho*, 629 F.3d at 892) ("The FCRA expects consumers to dispute the validity of a debt with the furnisher of the information or append a note to their credit report to show the claim is disputed."). The correct way to resolve legal defenses to Plain Green and Great Plains' loans was in a lawsuit against those lenders. "If a court had ruled the [loans] invalid and Trans Union had continued to report it as a valid debt, *then* [plaintiffs] would have grounds

---

[4] We have seen the FCRA used to attack the validity of a debt before. In *Humphrey v. Trans Union LLC*, 759 F. App'x 484 (7th Cir. 2019), the plaintiff sued several consumer reporting agencies under §§ 1681e(b) and 1681i, claiming they inaccurately reported his student loan debt as past due after he disputed his repayment obligations. *Id*. at 487. The plaintiff alleged only that his credit reports were legally inaccurate. *Id*. at 487–88. "Because Humphrey's complaint did not allege a factual inaccuracy on his credit report," we ruled, "the district court correctly granted the [consumer reporting agencies'] joint motion for judgment on the pleadings." *Id*. at 488. This ruling rested on three conclusions. First, whether the plaintiff must make loan payments "required a legal determination" that his loan servicer "was in a better position than the [consumer reporting agencies] to make." *Id*. Second, "[consumer reporting agencies] are not a tribunal to resolve legal disputes." *Id*. Third, "a consumer may not use the Fair Credit Reporting Act to collaterally attack the validity of a debt by challenging a [consumer reporting agency]'s reinvestigation procedure." *Id*.

for a potential FCRA claim." *DeAndrade*, 523 F.3d at 68. Because no formal adjudication discharged plaintiffs' debts, no reasonable procedures could have uncovered an inaccuracy in plaintiffs' credit reports.

The § 1681i claim runs into the same problems. When a consumer disputes the "accuracy of any item of information" contained in a credit report, § 1681i requires consumer reporting agencies to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). Like § 1681e(b), § 1681i requires the "accuracy" of information but does not differentiate between factual and legal accuracy. Yet "one of the most basic rules of statutory interpretation" is that "identical words used in different parts of the same act are intended to have the same meaning." *Ortiz-Santiago v. Barr*, 924 F.3d 956, 962 (7th Cir. 2019) (quoting *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986)); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 170–73 (2012) (explaining presumption of consistent usage canon). So we likewise interpret inaccurate information under § 1681i to mean factually inaccurate information, as consumer reporting agencies are neither qualified nor obligated to resolve legal issues.

The § 1681i claim is predicated on Trans Union's "failure to reasonably reinvestigate" Denan's disputed debt. But again, plaintiffs' complaint pleaded only speculative legal inaccuracies, so no reinvestigation by Trans Union could have uncovered an inaccuracy in Denan's credit report. As with a § 1681e(b) claim, "a consumer disputing the legal validity of a debt that appears on her credit report should first attempt to resolve the matter directly with the creditor or furnisher,

which stands in a far better position to make a thorough in-vestigation of a disputed debt than the [consumer reporting agency] does on reinvestigation." *Carvalho*, 629 F.3d at 892 (ci-tation and internal quotation marks omitted); *DeAndrade*, 523 F.3d at 68 (holding same).

Plaintiffs labor under the impression that our decision in *Henson v. CSC Credit Servs.,* 29 F.3d 280 (7th Cir. 1994) compels a contrary outcome. In particular, plaintiffs read *Henson* as re-quiring consumer reporting agencies to consider both legal and factual accuracy of the data contained in their credit re-ports. *Henson* imposes no such requirement. In that case, con-sumer reporting agencies reported that the plaintiff owed a money judgment. Though the agencies obtained this infor-mation from a court record, it turned out that a court clerk erroneously entered the judgment. *Id*. at 282–83. The plaintiff sued the agencies alleging violations of §§ 1681e(b) and 1681i for reporting the incorrect information. *Id*. at 283–86. We held that "a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate." *Id*. at 285. The dismissal of the plaintiff's § 1681e(b) claim was affirmed, but we re-manded the § 1681i reinvestigation claim to determine whether plaintiff sufficiently alerted the consumer reporting agency of a need to reinvestigate.

*Henson* never addressed the issue before us: whether §§ 1681e(b) and 1681i compel consumer reporting agencies to adjudicate a consumer's legal defenses to a debt. Instead, *Henson* considered two threshold elements to challenge the reasonableness of a consumer reporting agency's investiga-

tion procedures: (1) "noti[ce] of potentially inaccurate information"; and (2) "resources … [to] conduct a more thorough investigation." *Id*. at 286–87. Plaintiffs cannot overcome this second requirement for reasons already explained. No amount of resources could empower Trans Union to assume the role of a tribunal. And relatedly, because plaintiffs lack a formal adjudication voiding their debts, "a more thorough investigation" would not uncover an inaccuracy in their credit reports. It also bears mention that the inaccuracy challenged in *Henson* (whether a judgment was issued against the consumer) was straightforward, fact-based, and could be resolved through a reasonable investigation. But plaintiffs here insist Trans Union should settle legal issues involving choice-of-law clauses, state usury laws, and sovereign immunity doctrines—all issues only a court can resolve.

Last, plaintiffs argue that Trans Union failed to follow "reasonable procedures" in credentialing Plain Green and Great Plains as furnishers. As to that, we need not choose a side. Even if true, that quarrel concerns whether Trans Union should have allowed Plain Green and Great Plains to be furnishers; it is not an allegation that Trans Union prepared inaccurate credit reports. Plaintiffs only brought claims under §§ 1681e(b) and 1681i(a), and as a threshold matter Trans Union cannot be liable under either provision if it did not report inaccurate information. *See Walton*, 761 F. App'x at 591; *Sarver*, 390 F.3d at 971; *Henson*, 29 F.3d at 284.

### III

A plaintiff advancing §§ 1681e(b) and 1681i(a) claims must allege a credit report contained inaccurate information. Plaintiffs have not done so. Therefore, the district court's entry of judgment on the pleadings is AFFIRMED.