**Opinion issued April 9, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-22-00741-CV**

_____

**GEORGE JEMISON, Appellant**

**V.**

**EXPERIAN INFORMATION SOLUTIONS, INC., Appellee**

---

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-44130**

---

**MEMORANDUM OPINION**

In this case involving claims under the Fair Credit Reporting Act ("FCRA"),

appellant George Jemison sued appellee Experian Information Solutions, Inc.

("Experian") after Experian included an obligation for overdue child support on

Jemison's consumer credit report. Jemison asserted state-law tort claims against Experian and claims that Experian violated the FCRA. The trial court granted Experian's motion for traditional and no-evidence summary judgment and dismissed Jemison's claims with prejudice.

On appeal, Jemison, who is acting pro se, argues that: (1) an administrative child support order is not equivalent to a child support order signed by a judge in a judicial proceeding; (2) the Illinois Department of Healthcare and Family Services does not have authority equivalent to district courts to issue administrative child support orders; (3) the trial court erred in "excluding competent evidence, facts as they apply to the FCRA, federal law and Illinois state law, that was disclosed to, did not prejudice, and did not surprise the defendant"; (4) the trial court erred "in its application of court rules and procedures"; (5) the trial court did not "make its ruling in accordance with law"; and (6) the trial court did not rule on all issues presented to it before ruling on Experian's summary judgment motion.[1]

---

[1] Although Jemison lists six issues in the "Issues Presented" section of his appellate brief, he only presents argument relating to his first, second, and fifth issues. Jemison does not present argument concerning the exclusion of any evidence, specific rules and procedures that the trial court allegedly did not follow, or the court's failure to rule on any particular matters prior to rendering summary judgment. An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i); *McCoy v. Rogers*, 240 S.W.3d 267, 272 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (stating that party challenging summary judgment order must "present those arguments and supporting authority in order to merit reversal"). Although we construe briefs filed by pro se appellants liberally and with patience, parties proceeding pro se "must comply with all applicable procedural

2

We affirm.

## Background

George Jemison married in Cook County, Illinois, in 1985, and he and his wife had two daughters who are now adults. At some point, Jemison and his wife separated. In January 1998, the Illinois Department of Public Aid issued a default "Administrative Support Order" against Jemison, requiring him to pay $527 per month in child support beginning in March 1998 until a further order or until his youngest daughter turned 18 in 2006. According to a certified "Support Calculation Worksheet" prepared by the State of Illinois Child Support Services, Jemison made regular support payments from 1998 to 2002. Jemison made sporadic payments in 2003, 2013, 2014, 2015, 2016, 2017, and 2018. Jemison and his wife divorced in Cook County, Illinois, in 2010.

In January 2014, Experian, a consumer reporting agency, prepared a copy of Jemison's consumer credit report and provided it to him. Under a section entitled "Your accounts that may be considered negative," Jemison's consumer report listed an alleged debt to the Illinois Department of Healthcare and Family Services ("the Department"). This item stated that the type of debt was "Child Support," that the

---

rules," which "include proper presentation of a case on appeal as is similarly required in the trial court." *Smart v. Prime Mortg. & Escrow, LLC*, 659 S.W.3d 155, 160 (Tex. App.—El Paso 2022, pet. denied). Because Jemison did not present any argument relating to his third, fourth, and sixth issues, we hold that these issues have not been adequately briefed and are waived. *See* TEX. R. APP. P. 38.1(i).

3

"Date Opened" was March 1998, and that the debt was "First Reported" in January 2014. The terms of the debt, including the monthly payment amount, were not reported, but the consumer report stated: "Collection account. $42,356 past due as of Jan 2014. This account is scheduled to continue on record until Jul 2020." Several months later, in September 2014, Experian resolved a dispute initiated by Jemison by updating Jemison's address and removing spousal information. Jemison was aware of the presence of the child support debt on his consumer report, and he "may have called" Experian directly to see how that debt could be removed.

In August 2017, Jemison sent a letter to Experian stating, in all capitals and bold font:

> The undersigned is disputing the alleged child support debt information that appears on his credit report, and this false information is substantially affecting his credit score, and he requires verification of debt, that this credit reporting agency is relied upon before posting debt information[.]

Jemison also argued that a provision of the United States Code required consumer reporting agencies to "provide a court ordered debt complete with seal of the court and signed by [the] clerk," and without such an order, no valid debt existed. In response, Experian conducted a reinvestigation of the dispute and prepared another consumer report for Jemison. Experian informed Jemison of several actions he could take if he did not believe Experian had satisfactorily resolved his dispute, including adding a short statement to his consumer report or directly contacting the creditor.

4

The August 2017 consumer report continued to list the debt to the Department, with an outstanding balance of $49,112.

In May 2018, Jemison inquired with the Department about his alleged child support debt and demanded that the debt be terminated. The Department responded that it was "enforcing [his] case" under an "Administrative child support order" and stated:

> Research of your case finds the Administrative child support order . . . for current support ended on November 26, 2006 when your youngest child . . . turned eighteen years old. The terms on the current support order were $527.00 per month. As of May 25, 2018, our system indicates the total remaining balance due to unpaid support on this case is $50,707.59. A portion of the total balance ($10,435.02) is owed to the State of Illinois because there were times when support was not paid and services were provided by the State. The accrued interest portion of the total balance is $27,072.55. No review was completed. These balances are not certified.

The letter provided information on how interest was calculated and on how Jemison could make payments.

Several months after the Department sent Jemison this letter, Chase Bank informed Jemison that it had placed a hold on his account because it had received notice from the Department of a lien against Jemison for unpaid child support. Around this same time, Jemison applied for a business loan from Seek Capital, LLC. Jemison was not approved for this loan, and the funding advisor confirmed that "the only delinquency on file is the child support collection" and everything else in Jemison's credit history was "in good standing."

5

Jemison filed suit against Experian in July 2018. He alleged that the child support debt was not valid because no lawsuit for child support was ever initiated and therefore no court order existed requiring him to pay child support. He also alleged that Experian "made no reasonable effort to abide by its duty to validate the existence of a valid judgment" before it included the child support debt on his consumer report. He further alleged that after he disputed this debt, Experian still made no reasonable effort to validate the debt and "did not use reasonable procedures regarding this matter to assure maximum possible accuracy in files maintained on [Jemison]." Jemison asserted claims for "breach of duty," tortious interference with prospective contracts, "[v]iolations of the Fair Credit Reporting Act 15 U.S.C. § 1681," emotional distress, defamation, and negligence. Jemison requested removal of the child support debt from his consumer report and compensatory damages.

Experian moved for traditional and no-evidence summary judgment. With respect to Jemison's claim under the FCRA, Experian argued that an essential element of such a claim is that Experian reported an inaccuracy about Jemison, but undisputed evidence showed that information about the child support debt that Experian reported was accurate. The FCRA mandates that Experian, as a consumer reporting agency, report overdue child support when that information is provided to Experian by a state child enforcement agency such as the Department. Moreover, even if no court order established Jemison's child support obligation, the FCRA

6

required reporting of overdue child support if the obligation had been established through an administrative process mandated by state law, which is what occurred in Jemison's case. Experian argued that Jemison could not use his lawsuit against Experian to challenge the substantive or procedural validity of the Department's administrative support order. Experian further argued that, as a matter of law, its procedures were reasonable and the Department was a presumptively reliable source of information.

With respect to Jemison's state-law claims, Experian argued that the FCRA preempted Jemison's claims for defamation and negligence because the FCRA required evidence of "malice or willful intent to injure" a plaintiff, and Jemison could produce no evidence to satisfy this intent requirement. Experian also argued that Jemison could produce no evidence to support any elements of a claim for tortious interference with prospective relations. Experian further argued that neither "breach of duty" nor "emotional distress" was a standalone cause of action in Texas. Instead, breach of duty is an element of a negligence claim, and emotional distress is a measure of damages.[2] Experian requested that the trial court dismiss Jemison's claims.

---

[2] Experian also argued that to the extent Jemison asserted a claim for intentional infliction of emotional distress, Jemison could produce no evidence to support any elements of that claim.

Jemison filed a combined response to Experian's summary judgment motion and his own no-evidence and traditional summary judgment motion.[3] He argued that Experian had produced no evidence of an award or judgment relating to child support. Instead, Experian could only point to an administrative decision that, Jemison argued, had violated his due process rights. He also argued that Experian had a duty to ensure that a furnisher of credit information, such as the Department, certifies the existence of a debt, but Experian presented no evidence that the Department certified the existence of a child support order or award. Jemison further argued that Experian presented no evidence that it had used reasonable procedures to ensure the accuracy of the information that it reported, contending that reasonable procedures would have revealed an "[a]ctual court case number" and "[d]etails of an award, judgment or agreement." Jemison also argued that once he disputed the accuracy of the child support debt, Experian did not properly reinvestigate the dispute, pointing to an interrogatory response from Experian stating that it had not contacted the Department to validate the debt because the investigating agent

---

[3] Jemison's summary judgment evidence included his August 2017 dispute letter to Experian; his January 2014, September 2014, August 2017, March 2018, and September 2018 consumer reports from Experian; the loan denial emails from Seek Capital; documents relating to his divorce; the letter from Chase Bank concerning the hold on his bank account; Experian's discovery responses; the May 2018 letter from the Department concerning his child support obligation; March 2018 consumer reports from TransUnion and Equifax; and two contracts between Experian and the Department.

"believed that the item disputed was not on file and promptly returned dispute results to the consumer."

Although Experian filed its motion for summary judgment in February 2020 and set the motion for hearing in April 2020, the motion remained pending into 2022. In May 2022, Experian moved for leave to file additional summary judgment evidence: the January 1998 default "Administrative Support Order" completed by the Illinois Department of Public Aid, and the "Support Calculation Worksheet" prepared by the State of Illinois Child Support Services in July 2021. Experian alleged that it discovered these documents in "a separate federal case involving" Jemison, and Jemison had failed to produce these documents during discovery in the underlying proceeding. Experian argued that these two documents—in addition to the exhibits it had already attached to its summary judgment motion—established that its credit file on Jemison was accurate, and therefore Jemison could not recover on any of his claims. Jemison objected to Experian's request to supplement the summary judgment record.

The trial court granted Experian's summary judgment motion and dismissed Jemison's claims with prejudice. The trial court's order stated that it considered Experian's motion for leave to file additional evidence and granted that motion. Jemison filed a motion to modify, correct, or reform the final judgment, which was overruled by operation of law. This appeal followed.

## Summary Judgment

In his first issue, Jemison argues that administrative child support orders are not equivalent to child support orders issued by courts and therefore obligations arising out of administrative orders should not be included in consumer reports under the FCRA. In his second issue, Jemison argues that the Department lacks authority equivalent to that of district courts to issue child support orders that must be furnished to consumer reporting agencies under the FCRA. In his fifth issue, Jemison argues that the trial court's summary judgment ruling was not made "in accordance with law." We address these three issues together.

### A.    *Standard of Review*

We review a trial court's summary judgment ruling de novo. *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 72 (Tex. 2023). If a party moves for summary judgment on both traditional and no-evidence grounds, as Experian did here, we generally consider the no-evidence portion of the motion first. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). If the nonmovant does not overcome his no-evidence burden "on any claim, we need not address the traditional motion to the extent it addresses the same claim." *Id.*

After an adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim on which an adverse party would bear the burden of proof at trial. TEX.

R. CIV. P. 166a(i). The trial court must grant the motion unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact on the challenged elements. *Id.*; *Lightning Oil*, 520 S.W.3d at 45. A party moving for traditional summary judgment must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on the issues expressly set out in the motion. *See* TEX. R. CIV. P. 166a(c); *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021). If the movant satisfies this burden, the burden shifts to the nonmovant to raise a fact issue precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018).

A fact issue exists if more than a scintilla of evidence establishes the existence of the challenged element. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* at 601 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). The evidence is less than a scintilla if it is so weak that it does no more than create a mere surmise or suspicion of the fact's existence. *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

In reviewing a summary judgment ruling, we examine the evidence in the light most favorable to the non-moving party, indulging reasonable inferences and resolving doubts against the party seeking summary judgment. *Helena Chem. Co.,*

11

664 S.W.3d at 73. When the trial court does not specify the grounds it relied upon in making its determination, we must affirm the summary judgment ruling if any of the grounds asserted are meritorious. *Lightning Oil*, 520 S.W.3d at 45. Thus, in this situation, the appealing party must demonstrate on appeal that none of the proposed grounds is sufficient to support the judgment. *McCoy v. Rogers*, 240 S.W.3d 267, 271 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). "If summary judgment may have been rendered, properly or improperly, on a ground not challenged on appeal, the judgment must be affirmed." *Id.*

**B.** **Governing Law: The Fair Credit Reporting Act and Relevant Illinois Statutes and Administrative Regulations**

Consumer reporting agencies such as Experian "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." *See* 15 U.S.C. § 1681(a)(3). Congress has recognized that the banking system is "dependent upon fair and accurate credit reporting." *Id.* § 1681(a)(1). Inaccurate credit reports "directly impair the efficiency" of the system, and "unfair credit reporting methods undermine the public confidence" in the system. *Id.* Congress enacted the FCRA "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." *Id.* § 1681(b); *Washington v. CSC Credit Servs.*

12

*Inc.*, 199 F.3d 263, 265 (5th Cir. 2000); *Pinner v. Schmidt*, 805 F.2d 1258, 1261 (5th Cir. 1986) (stating that purpose of FCRA is to protect individuals from use of inaccurate or arbitrary information in consumer reports).

Under the FCRA, a "consumer reporting agency" is "any person which . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f); *see id.* § 1681a(c) (defining "consumer" as "an individual"). "Consumer report" means "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used" to serve as a factor in establishing the consumer's eligibility for credit or insurance "to be used primarily for personal, family, or household purposes," employment purposes, or any other statutorily authorized purpose. *Id.* § 1681a(d)(1). The FCRA expressly excludes certain information from consumer reports, *see id.* § 1681c(a), and it outlines permissible circumstances in which a consumer reporting agency can furnish a consumer report. *See id.* § 1681b.

The FCRA contains a provision specifically addressing information relating to overdue child support obligations. *See id.* § 1681s-1. Section 1681s-1 provides:

> Notwithstanding any other provision of this subchapter, a consumer reporting agency shall include in any consumer report furnished by the

13

agency in accordance with section 1681b of this title, any information on the failure of the consumer to pay overdue support which—

> (1)  is provided—
>
>> (A)  to the consumer reporting agency by a State or local child support enforcement agency; or
>>
>> (B)  to the consumer reporting agency and verified by any local, State or Federal Government agency; and
>
> (2)  antedates the report by 7 years or less.

*Id.* In defining "overdue support," the FCRA refers to a provision of the Social Security Act, which defines the term as "the amount of a delinquency pursuant to an obligation determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a minor child which is owed to or on behalf of such child . . . ." *Id.* § 1681a(j)(1) (referring to definition of "overdue support" contained in 42 U.S.C. § 666(e)); *see also id.* § 1681a(j)(2) (defining "State or local child support enforcement agency" as "a State or local agency which administers a State or local program for establishing and enforcing child support obligations").

In Illinois, the Department is the entity responsible for establishing, modifying, enforcing, and collecting "child and spouse support obligations from responsible relatives." ILL. ADMIN. CODE tit. 89, § 160.10(a). The Illinois Administrative Code sets out an administrative process in which the Department can establish an obligor's child support obligation through an administrative support

14

order. *See id.* tit. 89, § 160.60. An aggrieved party may petition the Department for release from the order if certain criteria are met. *Id.* tit. 89, § 160.60(g); *see id.* tit. 89, § 104.101(a); *see also* 305 ILL. COMP. STAT. 5/10-11 (providing that if "responsible relative" fails to timely petition Department for release from or modification of administrative order, "the order shall become final and there shall be no further administrative or judicial remedy"). "Any new or existing support order entered by the Illinois Department under this Section shall be deemed to be a series of judgments against the person obligated to pay support thereunder," and "[e]ach such judgment shall have the full force, effect and attributes of any other judgment of [Illinois], including the ability to be enforced." 305 ILL. COMP. STAT. 5/10-11.

Every consumer reporting agency "shall maintain reasonable procedures designed" (1) to avoid violations of the section of the FCRA excluding information from consumer reports and (2) to "limit the furnishing of consumer reports" to the permissible purposes listed in the FCRA. 15 U.S.C. § 1681e(a). "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Id.* § 1681e(b). Section 1681e(b) "imposes a duty of reasonable care in the preparation of a consumer report." *Pinner*, 805 F.2d at 1262.

The FCRA outlines a procedure for when a consumer disputes the accuracy of information in a consumer report. *See* 15 U.S.C. § 1681i. If the consumer disputes the completeness or accuracy of any item of information contained in the consumer's file and notifies the consumer reporting agency about the dispute, the agency shall "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information" or "delete the item from the file" within 30 days of receiving the notice of dispute. *Id.* § 1681i(a)(1)(A); *see also id.* § 1681a(g) (defining "file," when "used in connection with information on any consumer," to mean "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored"); *Pinner*, 805 F.2d at 1262 ("[T]he FCRA imposes a duty upon reporting agencies to reinvestigate and to delete information found to be inaccurate or no longer verifiable once the consumer has protested the inclusion of the material.").

The consumer reporting agency shall, within 5 business days of receiving notice of a dispute, "provide notification of the dispute to any person who provided any item of information in dispute," and the notification "shall include all relevant information regarding the dispute that the agency has received from the consumer." 15 U.S.C. § 1681i(a)(2)(A). The consumer reporting agency may terminate a reinvestigation if the agency "reasonably determines that the dispute by the

16

consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." *Id.* § 1681i(a)(3)(A).

Any person who willfully fails to comply with any requirement imposed by the FCRA with respect to any consumer is liable to that consumer for any actual damages sustained by the consumer as a result of the failure, punitive damages, costs, and reasonable attorney's fees. *Id.* § 1681n(a)(1)(A). A person may also be liable to a consumer for actual damages, costs, and reasonable attorney's fees if the person is negligent in failing to comply with any requirement imposed by the FCRA. *Id.* § 1681*o*(a); *see Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 567 (5th Cir. 2020) (stating that FCRA "authorizes consumers to bring a private cause of action in response to negligent or willful violations" of Act).

## C.      *Whether Jemison Raised a Fact Issue on His FCRA Claims*

In his original petition, Jemison asserted a claim against Experian for "[v]iolations of the Fair Credit Reporting Act 15 U.S.C. § 1681 ('FCRA')." Although he did not specify the provisions of the FCRA under which he was asserting claims, Jemison alleged that Experian "did not use reasonable procedures regarding this matter to assure maximum possible accuracy in files maintained on [Jemison]." *See* 15 U.S.C. § 1681e(b). He also alleged that after he disputed the child support order, Experian "made no reasonable effort to abide by its duty to validate

17

the existence of a valid debt . . . ." We construe this allegation as a claim that Experian violated the reinvestigation provision of the FCRA. *See id.* § 1681i.

To prevail in a suit alleging that a consumer reporting agency either negligently or willfully violated section 1681e(b), the plaintiff must establish that: (1) the consumer reporting agency failed to follow reasonable procedures to assure the accuracy of its reports; (2) the report in question was, in fact, inaccurate; (3) the plaintiff suffered injury; and (4) the consumer reporting agency's failure caused the injury. *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1239 (10th Cir. 2015); *see Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020) (requiring plaintiff to show that "a consumer reporting agency prepared a report containing 'inaccurate' information" to prevail under section 1681e(b)). "A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998).

A claim that a consumer reporting agency violated its reinvestigation duties under section 1681i(a) requires that the plaintiff prove "essentially the same elements as those" for a claim under section 1681e(b). *Wright*, 805 F.3d at 1242. The plaintiff must prove that (1) he informed the consumer reporting agency about the inaccuracy; (2) the agency used unreasonable procedures in reinvestigating the

18

credit report; (3) the report was inaccurate; (4) the plaintiff suffered an injury; and (5) the agency's failure to reinvestigate caused the plaintiff's injury. *Id.*; *see, e.g.*, *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 65–67 (1st Cir. 2008) (examining case law from other federal circuits and concluding that "the weight of authority in other circuits indicates that without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail"); *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (requiring plaintiff to make "prima facie showing of inaccurate reporting" under both sections 1681e and 1681i) (quotations omitted); *Estrada v. Experian Info. Sols., Inc.*, 670 F. Supp. 3d 412, 419 (W.D. Tex. 2023) ("[B]efore considering whether Defendant followed reasonable reporting procedures, reasonably investigated Plaintiff's disputes, or caused Plaintiff harm, the court must determine whether Plaintiff's credit report was inaccurate.").

To trigger the reinvestigation requirement, the inaccuracy must be a *factual* inaccuracy. *See DeAndrade*, 523 F.3d at 68. The "decisive inquiry" is whether the consumer reporting agency could have uncovered the inaccuracy if it had reasonably reinvestigated the matter. *Id.* (quoting *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)). If the question is one that can only be resolved by a court of law—such as whether a mortgage reported on a credit report is valid—that is not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation; rather, it is a legal issue that a credit reporting agency is "neither qualified nor

19

obligated to resolve under the FCRA." *Id.* Consumers cannot use an FCRA suit against a consumer reporting agency as a vehicle to collaterally attack a debt included on a consumer report. *Id.*

We agree with Experian that Jemison has failed to raise a fact issue that his consumer credit report prepared by Experian was inaccurate, an essential element of his claim that Experian failed to use reasonable procedures to assure maximum possible accuracy of the information in his credit report and his claim that Experian failed to conduct a reasonable reinvestigation of the disputed information.

The summary judgment record includes a default administrative support order prepared and signed by an authorized representative of the Illinois Department of Public Aid on January 13, 1998. This order included a finding that Jemison had the legal obligation to support his two daughters. The order required Jemison to pay $527 per month in current child support beginning on March 1, 1998, until further order or until his youngest daughter reached the age of 18, in 2006. According to a "Support Calculation Worksheet" prepared by the State of Illinois Child Support Services in July 2021, payments were consistently made from May 1998 through May 2002 and sporadic payments were made in 2003 and between 2013 and 2018. This worksheet stated that Jemison owed $23,279.39 in outstanding child support.

The summary judgment record also includes a letter that the Illinois Department of Healthcare and Family Services sent to Jemison in May 2018. In this

letter, the Department stated that it was enforcing an administrative child support order against Jemison. The letter stated that the order "for current support" ended in November 2006, when Jemison's youngest daughter turned 18, but Jemison had an outstanding balance for "unpaid support" in the amount of $50,707.59. Jemison owed approximately $10,400 of that balance to the State of Illinois "because there were times when support was not paid and services were provided by the State." Accrued interest constituted approximately $27,000 of the outstanding balance. In connection with this unpaid debt, the Department notified Chase Bank in August 2018 and asserted a lien on Jemison's checking account. Chase Bank placed a hold on Jemison's account in response.

In the summary judgment proceedings and on appeal, Jemison does not argue that the amount of overdue child support furnished to Experian by the Department and included on Jemison's consumer report is inaccurate. Instead, he argues that the administrative child support order did not establish a valid legal obligation to pay child support because it was not signed by a judge as part of a judicial proceeding. This, however, does not render Experian's inclusion of the child support debt on Jemison's consumer report inaccurate. The FCRA requires that certain information be included and certain information be excluded from consumer reports. *See* 15 U.S.C. § 1681c. The Act also provides:

> Notwithstanding any other provision of this subchapter, a consumer reporting agency shall include in any consumer report furnished by the

21

agency in accordance with section 1681b of this title, any information on the failure of the consumer to pay overdue support which—

> (1) is provided—
>
>> (A) to the consumer reporting agency by a State or local child support enforcement agency; or
>>
>> (B) to the consumer reporting agency and verified by any local, State or Federal Government agency; and
>
> (2) antedates the report by 7 years or less.

*Id.* § 1681s-1. The FCRA defines "overdue support" by referring to a definition in the Social Security Act: "For purposes of this section, the term 'overdue support' means the amount of a delinquency pursuant to an obligation determined under a court order, *or an order of an administrative process established under State law*, for support and maintenance of a minor child which is owed to or on behalf of such child . . . ." 42 U.S.C. § 666(e) (emphasis added); 15 U.S.C. § 1681a(j)(1) ("The term 'overdue support' has the meaning given to such term in section 666(e) of Title 42.").

The definition of "overdue support" contained in the Social Security Act— and incorporated into the FCRA—is not limited to a delinquent support obligation determined under a court order. Instead, "overdue support" also includes the amount of a child support delinquency pursuant to an obligation determined under "an order of an administrative process established under State law." 42 U.S.C. § 666(e). The administrative process used by the Illinois Department of Public Aid to establish

22

Jemison's child support obligation in an administrative support order in 1998 is such a process. *See* ILL. ADMIN. CODE tit. 89, § 160.60; *see also* 305 ILL. COMP. STAT. 5/10-1–10-28 (setting out statutory scheme for, among other things, enforcing parent's legal obligation to support children). Because Jemison's overdue child support obligation is a delinquency pursuant to an obligation determined under an order of an administrative process established under State law and provided to Experian by the Department, Experian was required to include information concerning Jemison's failure to pay this obligation in his consumer report. *See* 15 U.S.C. § 1681s-1; *Johnson v. Trans Union, LLC*, 524 F. App'x 268, 271 (7th Cir. 2013) (concluding that Department became responsible for enforcing plaintiff's child support obligation following divorce decree ordering plaintiff to pay child support, Department was required to report delinquency to consumer reporting agencies, and consumer reporting agencies were required by FCRA to include that information on plaintiff's credit report).[4]

---

[4]     Jemison attempts to distinguish the Seventh Circuit's opinion in *Johnson v. Trans Union, LLC* by arguing that the child support obligation in that case was pursuant to a court-ordered divorce decree, while the obligation in this case was only established through an administrative support order and not a court order. *See Johnson v. Trans Union, LLC*, 524 F. App'x 268, 269 (7th Cir. 2013). However, Illinois law provides that the Department can issue administrative orders concerning child support obligations under a process set out by statute and administrative regulations "[i]n lieu of actions for court enforcement of support." 305 ILL. COMP. STAT. 5/10-11. Any "new or existing support order" entered by the Department pursuant to section 10-11 "shall be deemed to be a series of judgments against the person obligated to pay support thereunder," and "[e]ach such judgment shall have the full force, effect and attributes of any other judgment of [Illinois], including the

23

We conclude that Jemison has not raised a fact issue on whether the consumer report prepared by Experian contained an inaccuracy with respect to his child support obligation. *See Wright*, 805 F.3d at 1242 (stating that inaccuracy in consumer report is element of claim under both sections 1681e(b) and 1681i(a) of FCRA). To the extent Jemison argues that the Illinois Department of Public Aid erroneously entered the January 1998 administrative support order against him, did not follow proper procedures in entering this order, violated the separation of powers doctrine in entering the order, and violated his due process rights in entering the order, we note that these are legal challenges to the underlying child support debt that cannot be raised in this suit against Experian under the FCRA. *See DeAndrade*, 523 F.3d at 68 (stating that suit against consumer reporting agency under FCRA cannot be used as vehicle to collaterally attack debt included on consumer report).

The Department reported to Experian that Jemison had a debt for overdue child support. Jemison presented no summary judgment evidence establishing that he had successfully challenged the administrative support order through the administrative process or in court. *See* ILL. ADMIN. CODE tit. 89, § 160.60(g); *see also* 305 ILL. COMP. STAT. 5/10-11 (providing that if "responsible relative" fails to

---

ability to be enforced." *Id.* Thus, under Illinois law, the administrative support order issued against Jemison can be enforced like a judgment signed by a judge in a judicial proceeding. We conclude that *Johnson* is not factually distinguishable from this case.

timely petition Department for release from or modification of administrative order, "the order shall become final and there shall be no further administrative or judicial remedy"). Under the circumstances of this case, Experian was not required to engage in legal analysis to determine whether Jemison was correct in his belief that the administrative support order was invalid. *See Denan*, 959 F.3d at 297 ("No amount of resources could empower Trans Union to assume the role of a tribunal."); *DeAndrade*, 523 F.3d at 68 ("If a court had ruled the mortgage invalid and Trans Union had continued to report it as a valid debt, *then* DeAndrade would have grounds for a potential FCRA claim. In essence, DeAndrade has crossed the line between alleging a factual deficiency that Trans Union was obliged to investigate pursuant to the FCRA and launching an impermissible collateral attack against a lender by bringing an FCRA claim against a consumer reporting agency."). A "more thorough investigation" of the matter would not have uncovered an inaccuracy in the reporting of the child support debt. *See Denan*, 959 F.3d at 297.

We hold that the trial court properly granted summary judgment in favor of Experian on Jemison's claims under the FCRA. *See* 15 U.S.C. §§ 1681e(b), 1681i(a); *Wright*, 805 F.3d at 1242. We therefore overrule Jemison's first, second,

and fifth issues challenging the trial court's summary judgment order on the FCRA claims.[5]

In addition to his claims under the FCRA, Jemison asserted several state-law tort claims against Experian: claims for "breach of duty," tortious interference with prospective relations, intentional infliction of emotional distress, defamation, and negligence. Experian challenged each of these causes of action in its summary judgment motions. The trial court granted summary judgment in favor of Experian without stating its reasoning and dismissed Jemison's claims with prejudice.

On appeal, Jemison does not raise appellate issues specifically challenging the trial court's grant of summary judgment on his state law claims. When the trial court does not specify the grounds on which it granted summary judgment, the appealing

---

[5] Jemison argues that Experian did not use his consumer report to enforce a child support order, as authorized by FCRA section 1681b(a)(4)(A), but it instead used it for an impermissible purpose "in connection with" an administrative proceeding. *See* 15 U.S.C. § 1681b(a)(4)(C). Section 1681b(a) sets out specific circumstances under which a consumer reporting agency may furnish a consumer report. *See* 15 U.S.C. § 1681b(a). One circumstance is "[i]n response to a request by the head of a State or local child support enforcement agency . . . if the person making the request certifies to the consumer reporting agency that . . . the consumer report is needed for the purpose of . . . enforcing a child support order, award, agreement, or judgment" if the person making the request also certified that the report will be kept confidential and "will not be used in connection with any other civil, administrative, or criminal proceeding, or for any other purpose." 15 U.S.C. § 1681a(4)(A), (C). Jemison, however, asserted no claim in his original petition that Experian had provided his consumer report to an improper third-party or for an impermissible purpose. Instead, his asserted FCRA claims against Experian concern what information was included in his consumer report, not the purposes for which the report was used. Section 1681b(a)(4) is therefore not relevant to our resolution of Jemison's issues on appeal.

party must demonstrate that "none of the proposed grounds is sufficient to support the judgment." *See McCoy*, 240 S.W.3d at 271. "If summary judgment may have been rendered, properly or improperly, on a ground not challenged on appeal, the judgment must be affirmed." *Id.*; *see Lightning Oil*, 520 S.W.3d at 45 (stating that when trial court does not specify grounds it relied upon in making summary judgment ruling, we must affirm if any asserted grounds are meritorious). Because Jemison does not challenge the trial court's ruling granting summary judgment in favor of Experian on Jemison's state-law tort claims, we must affirm the summary judgment ruling on these claims. *See McCoy*, 240 S.W.3d at 271.

## Conclusion

We affirm the judgment of the trial court.


April L. Farris
Justice

Panel consists of Justices Goodman, Countiss, and Farris.